(43 App. Div. 458.)

RICE v. RICE.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. IMPEACHING WITNESS—INCONSISTENT STATEMENTS—FOUNDATION.
    Testimony of statements by a witness inconsistent with his testimony is inadmissible, unless he has been asked on cross-examination if he made such statements, and, if so, given an opportunity to explain or qualify; and on such examination his attention must be called to the time, place, and circumstances of the alleged inconsistent statement with as much particularity as possible.

2. NOTE—PROMISE TO PAY AT MAJORITY—CONSIDERATION—BURDEN OF PROOF.
    A written promise to pay another a certain sum of money when he becomes 21 years of age, which recites that it is for a valuable con-

sideration, is not a promissory note, so as to relieve promisee, suing thereon, of the burden of proving a consideration; but the recital of a consideration is an admission which, if not modified or destroyed by other evidence, would warrant an inference that there was a consideration.

Appeal from trial term, Suffolk county.

Action by Oliver J. Rice against Rachel G. Rice. From a judgment in favor of plaintiff, defendant appealed. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Timothy M. Griffing, for appellant.
George H. Furman, for respondent.

WILLARD BARTLETT, J. This action was brought upon an instrument in writing, of which the following is a copy:

"For value received, I promise to pay Oliver James Rice or order the sum of fifteen hundred dollars when he is twenty-one years of age, with interest from date.             Rachel G. Rice.
"Mount Morris, January 1st, 1890.
"Witness: John Milliman."

The complaint alleged the execution of the instrument by the defendant on or about the day of its date, and its delivery by her to one William B. Hedges for and in behalf of the plaintiff. It further alleged that "the said note, according to the terms thereof, became due and payable on the 24th day of May, 1898"; that payment thereof was duly demanded and refused; and that the interest had been paid up to the 15th day of September, 1892, but no further. In her answer the defendant admitted that at the time alleged she subscribed the note substantially in the form set forth in the complaint, and delivered the same to William B. Hedges. She averred, however, that the instrument was so subscribed and delivered without any consideration whatsoever, that it never was delivered to the plaintiff, and that long before the commencement of the present action "said note, being rightfully in the possession of the defendant, was canceled by her." Upon these issues the case came to trial. The plaintiff put in evidence a charred piece of paper, the upper lefthand corner of which had evidently been entirely destroyed by fire. The remnant, however, was obviously a part of the written instrument set out in the complaint, and described therein as a promissory note bearing the signature of the defendant. The learned trial judge held that the production of the note raised a presumption of its delivery, and the plaintiff rested. The defendant then gave testimony in her own behalf tending to show that she received no consideration for the execution of the instrument, and that it was not delivered to Mr. Hedges for and in behalf of the plaintiff, as alleged in the complaint, but that she merely sent the paper to him to keep for her. Mr. Hedges testified to the same effect. The plaintiff then introduced evidence in rebuttal, and the case went to the jury, who found a verdict in the plaintiff's favor for the whole amount claimed.

The record discloses an erroneous ruling in respect to the admission of evidence, which constrains us to reverse the judgment entered upon this verdict. John Rice was called as a witness for the

plaintiff in rebuttal, and stated, among other things, that he well remembered having a conversation with William B. Hedges in relation to the note in suit. He was then asked this question: "Did Mr. Hedges tell you that he was to hold this note for the boy until he was twenty-one years of age?" The question was objected to on the ground that the attention of William B. Hedges had not been called either to the time or place of any such conversation. The objection was overruled, the defendant excepted, and the witness answered the question in the affirmative. Referring back to the testimony of William B. Hedges, whom the witness John Rice was thus allowed to impeach, we find that while Mr. Hedges was interrogated as to whether he ever told John Rice that the note was to be kept until the boy was 21 years of age, and was then to be turned over to him, neither the time nor place of the alleged conversation was specified, and Mr. Hedges answered at first that he did not think he ever told Mr. Rice any such thing, and finally that he had no recollection about it. The rule applicable to the proof of previous statements by a witness inconsistent with statements made by him upon the stand is laid down in these words by Sir James Fitzjames Stephen, in his well-known Digest of the Law of Evidence:

"Every witness under cross-examination in any proceeding, civil or criminal, may be asked whether he has made any former statement relative to the subject-matter of the action and inconsistent with his present testimony, the circumstances of the supposed statement being referred to sufficiently to designate the particular occasion, and if he does not distinctly admit that he has made such a statement, proof may be given that he did in fact make it." Article 131.

This rule seems first to have been authoritatively adopted in New York in the case of Pendleton v. Dressing Co., 19 N. Y. 13, 18, where Judge Denio expressed the opinion—in which all the members of the court concurred—that the occasion of the supposed conversation ought to be pointed out with reasonable certainty on the cross-examination of the witness whose credit is to be attacked by the proof of contradictory statements. "It cannot, of course, be necessary," he said, "that the precise date should be indicated, as that must often be difficult to ascertain, and, if ascertained, would not be likely, of itself, to recall the circumstance to the witness; but the place could easily be indicated and the occurrence identified by a statement of the purpose of the interview, or other circumstances which would recall it to the mind of the witness, if the conversation inquired of actually took place." From the time of that decision to the present day our higher courts have uniformly required that the attention of the witness shall have been called to the place and time or other identifying circumstances of the conversation in which it is claimed he made statements inconsistent with his present testimony, before evidence will be received to impeach his credibility by showing that he actually made contradictory statements on the same subject. Thus, in People v. Weldon, 111 N. Y. 569, 19 N. E. 279, a witness for the people was allowed to testify to a conversation which he had with one of the defendant's witnesses, who, when he was on the stand, testified that he had not had any conversation with the

people's witness upon the subject under discussion. This impeaching evidence was received against the objection and exception on the ground that the defendant's witness had not been previously interrogated in regard to the time, place, and subject of the alleged interview; and Chief Judge Ruger, speaking for the court of appeals, declared that the objection was well taken, and that, unless it had been waived by the course of the defendant in subsequently recalling his witness and examining him in reference to the supposed conversation, the exception would have been fatal to the conviction. The rule is the same in the federal courts, and throughout the Union generally. Railway Co. v. Artery, 137 U. S. 507, 11 Sup. Ct. 129; Mattox v. U. S., 156 U. S. 237, 245, 15 Sup. Ct. 337, 341. In the case last cited, Mr. Justice Brown says:

"The authorities, except in some of the New England states, are almost unanimous to the effect that, before a witness can be impeached by proof that he has made statements contradicting or differing from the testimony given by him upon the stand, a foundation must be laid by interrogating the witness himself as to whether he has ever made such statements. Justice to the witness himself requires, not only that he should be asked whether he had ever made such statements, but his attention should be called to the particular statement proposed to be proven, and he should be asked whether, at such a time and place, he had made that statement to the witness whose testimony is about to be introduced."

The same learned judge refers to an earlier decision of the supreme court of the United States to the same effect, in the case of Conrad v. Griffey, 16 How. 38, 46, where the requirement is declared to be essential to protect the character of a witness, refreshing his memory by inquiries which may enable him to explain the statements referred to, and show that they were made mistakenly, or, as made, do not really differ from his testimony.

In the case at bar, one of the most important issues was the question whether William B. Hedges received the so-called note merely as the agent for the defendant, to hold subject to her order, or whether it was delivered to him and received by him for and in behalf of the plaintiff. The declaration by Mr. Hedges to which the witness John Rice was permitted to testify over the objection and exception of the defendant was inconsistent with Mr. Hedges' testimony that he received the paper from the defendant as her agent, to hold for her. The rule of evidence which we have been considering was thus disregarded, not with reference to some comparatively insignificant matter, but in receiving proof as to one of the chief points at issue between the litigants. It is therefore impossible to overlook the error as harmless.

There is another interesting question in the case, a brief discussion of which may be of service in the conduct of the new trial which we find it necessary to order. Under the decision of the supreme court of Illinois in Kelley v. Hemmingway, 13 Ill. 604, it would seem that the instrument upon which the present suit was brought is not a promissory note at all. The instrument there under consideration read as follows: "Castleton, April 27th, 1844. Due Henry

D. Kelley fifty-three dollars when he is twenty-one years old, with interest. David Kelley." The court held that, inasmuch as the payment was conditioned upon the attainment of his majority by the payee,—an event which might never happen,—it was made dependent on a contingency, and therefore lacked one of the essential elements of a promissory note, which is that the money shall be certainly payable. This case is cited by Story and Daniel as authority for the proposition that a written promise to pay money when the payee shall come of age is not a good promissory note; "for non constat that he will ever arrive at that period of life." Story, Prom. Notes (7th Ed.) § 28; 1 Daniel, Neg. Inst. (4th Ed.) § 46. And we do not find that the correctness of the decision has ever been questioned. Numerous judicial declarations can be cited to the effect that contingency as to payment is fatal to the character of an instrument as a promissory note. As was said by Brown, J., in Carnwright v. Gray, 127 N. Y. 92, 27 N. E. 835, "the agreement to pay must not depend on any contingency, but be absolute and at all events." Assuming, then, that the paper before us is not a promissory note, it is nevertheless to be observed that it contains a recital of the receipt of value by the signer. While this recital does not have the effect of changing the burden of proof as to the existence of a consideration for the contract from the plaintiff to the defendant, it constitutes an admission on the subject which is available against the defendant, and from which alone, if its effect be not modified or destroyed by other evidence in the case, a good and sufficient consideration might be inferred. In the view which we take of the character of the instrument, however, the burden of proof on the question of consideration is not upon the defendant, but must remain throughout the trial upon the plaintiff, who must establish the existence of a consideration by a fair preponderance of proof.

Judgment reversed, and new trial granted; costs to abide the event. All concur.