Thomas F. Loughlin, Jr., by Thomas F. Loughlin, His Guardian ad Litem, Respondent, *v.* Daniel S. Brassil, Appellant.

1. Negligence — Liability of Master for Defective Machine. Where in an action by an employee to recover damages for injuries received while using a machine, it appears that the accident resulted from a bolt dropping out of place by reason of the falling off of a nut; that this had happened on several prior occasions to the knowledge of the plaintiff; that the nut had been tightened on the morning of the accident; that the trial court charged that no recovery could stand against the defendant because he used a defective machine and that his only duty in respect thereto, so far as plaintiff was concerned, was to repair it, that is, to replace the bolt from time to time as it dropped out, it is reversible error to refuse to charge that before imposing any liability upon the defendant for failure to tighten the nut, the jury must find that the defendant had notice, or by reasonable care could have obtained knowledge that the nut had become loose again after being tightened in the morning.

2. Evidence — Impeachment of Witness. Statements alleged to have been made by a witness on several occasions after the accident, contradictory of his testimony on the trial, are improperly received in evidence where it appears that his attention had been called to these occasions in such a vague manner as to render it doubtful whether or not he understood which one of the occasions he was interrogated about, and hence no foundation was laid for their admission.

3. Evidence of Repairs to Machine After Accident Incompetent. The reception of evidence that such witness had said after the accident "the press was now fixed all right" also constitutes error.

4. EVIDENCE THAT WITNESS WAS NEARLY INJURED BY THE MACHINE WHICH INJURED PLAINTIFF INCOMPETENT. The reception of evidence that such witness had said "that he came near losing both of his hands in the morning," is erroneous where such evidence was not limited to proof that he had been caught, or had said that he had been nearly caught by the machine under the same circumstances alleged to have prevailed when plaintiff met his accident.

5. IMPROPRIETY OF REMARKS OF COUNSEL AS TO DEFENDANT'S INSURANCE AGAINST LIABILITY. Remarks of counsel in summing up, to the effect that there was "no evidence that he (the defendant) was insured, most of these people are," and again, "many people get insured, but there is no evidence of any such thing in this case at all," duly objected to, were entirely improper.

*Loughlin* v. *Brassil*, 102 App. Div. 617, reversed.

(Argued December 21, 1906; decided January 8, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 23, 1905, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The action was brought to recover for personal injuries alleged to have been received through defendant's negligence. The facts, so far as material, are stated in the opinion.

*Thomas F. Magner* for appellant. The defendant was guilty of no negligence, and the complaint should have been dismissed. (*Welsh* v. *Cornell*, 168 N. Y. 508; *Hogan* v. *Smith*, 125 N. Y. 774; *Yaw* v. *Wittmore*, 46 App. Div. 422; *O'Connor* v. *Hall*, 52 App. Div. 428; *Creagan* v. *Marston*, 126 N. Y. 568; *Hudson* v. *O. S. S. Co.*, 110 N. Y. 625; *Watts* v. *Beard*, 18 App. Div. 243; *Clark* v. *Ritter*, 39 App. Div. 598; *Fleet* v. *H. A. Co.*, 74 App. Div. 572; *Foster* v. *N. P. Co.*, 183 N. Y. 45.) The exceptions to remarks of counsel for plaintiff in summing up warrant a reversal. (*Mungold* v. *B. R. T. Co.*, 81 App. Div. 381; *Cosselmon* v. *Dunfee*, 172 N. Y. 507; *Wildrick* v. *Moore*, 66 Hun, 630.)

*Melville J. France* for respondent. No question of law is involved in the alleged error contained in the remarks of plaintiff's counsel. (*Cattano* v. *M. S. Ry. Co.*, 173 N. Y.

565; *Demon* v. *N. Y. C. & H. R. R. R. Co.*, 173 N. Y. 356; *Cheseborough* v. *Conover*, 140 N. Y. 382.) No errors were committed in the admission of evidence. (*Furst* v. *R. R. Co.*, 72 N. Y. 543; *Homer* v. *Everett*, 91 N. Y. 641; *Kay* v. *M. S. Ry. Co.*, 163 N. Y. 447; *Burke* v. *B. C. M. Co.*, 98 App. Div. 219.) No error was committed in refusing the request to charge to which exception was taken. (*Fox* v. *Le Comte*, 2 App. Div. 61; *O'Flaherty* v. *N. E. R. R. Co.*, 34 App. Div. 74; *Keller* v. *N. Y. C. R. R. Co.*, 24 How. Pr. 172; *Carpenter* v. *Stillwell*, 11 N. Y. 61; *Hamilton* v. *Eno*, 81 N. Y. 116; *Doughty* v. *Hope*, 3 Den. 594; *Larkin* v. *W. M. Co.*, 45 App. Div. 6; *Reed* v. *McCord*, 160 N. Y. 330; *McGuire* v. *B. T. Co.*, 167 N. Y. 211.)

Hiscock, J.   Various errors were committed upon the trial of this case which require a reversal of the judgment appealed from.

The plaintiff, a young man of nineteen years, was injured while in the employ of defendant in a book binding establishment by having his hand caught in a press.

It will not be necessary to describe the press in more than a very general and brief way. It was a machine about six feet high, bolted to the floor. In its top was a die turned face downward. A movable part of the press moved up and down against this, a pitman rod being an important part of the machine which conveyed motion to the press. A wrought iron bolt, an inch and a half long, fastened with a half-inch nut, was employed in the machine in connection with the operation of the pitman rod, and it is claimed that upon the occasion of the accident the nut came off and the bolt dropped out of place, allowing the press improperly to take motion, whereby it unexpectedly came up and caught plaintiff's hand against the die as he was seeking to change it. There was evidence that the same thing had happened ten or twenty times before with this nut and bolt. The defendant gave testimony to the effect that the bolt had not dropped out either before or at the time of the accident, but of course

this question must be regarded as having been settled in favor of the plaintiff.

It is urged upon the argument of this appeal by respondent, as I understand it, that the evidence that the nut had come off and that the bolt had dropped out upon prior occasions permitted the jury without other proof to find that the bolt was defective and out of repair. Except for the aid of these suggestions, it would seem difficult to determine upon what exact theory or in what particulars the learned trial court did permit the jury to find that the machine was defective. Outside of general observations quite pertinent to this as an action of negligence, the trial judge only instructed the jury as follows: "It is claimed by the plaintiff that this machine was defective, that it was defective at the time he was engaged upon it at the time the accident happened, that the master disregarded his duty in furnishing him with a machine which was reasonably safe and in making a reasonable inspection and keeping the machine in proper repair."

Assuming that the jury were told and understood that they might find a defect in the machine of the character now claimed, I think that the general application of this instruction was materially modified by further instruction subsequently given in response to defendant's request, and attention is particularly called to such subsequent instruction, because I regard it of importance in determining the correctness of certain still later refusals to charge in behalf of the defendant, of which complaint is now made.

The court charged: "By continuing in the employment of the defendant, after knowing that the bolt had come off ten or twenty times, the plaintiff assented to the use of a machine liable to such an accident, and the defendant was entitled to continue to use the machine as it was, and to repair it from time to time as such accident occurred, and no negligence may be imputed to the defendant from so continuing to use the machine." The words, "to repair it from time to time as such accident occurred," are shown by the context to refer to the accident of the bolt getting out of place. Thus, we have

it as the law of this case that no recovery can stand against the defendant because he used a defective machine and that his only duty in respect thereto, so far as the plaintiff was concerned, was to repair it, that is, replace the bolt from time to time as it dropped out. Under this rule, I do not see that any duty was left upon defendant in respect to the machine, except to use reasonable diligence and care in inspecting and keeping watch of it and in replacing the bolt when the nut dropped off.

With this interpretation in mind I pass to the refusals to charge, to which reference has been made. The requests were as follows :

(1) " Defendant's Counsel : The replacing of the nut on the screw was a detail of the work, and if one of the defendant's employees was negligent in replacing the nut, such negligence was the negligence of a fellow-servant, for which the defendant is not responsible."

(2) " Before the jury can impose any liability on the defendant for failure to tighten the nut, they must find that the defendant had notice, or by reasonable care could have obtained knowledge that the nut had become loose again after being tightened in the morning."

Under the law of the case as finally formulated by the trial judge, I am inclined to think that the first refusal was error ; that the defendant, being entitled to use the machine as against the plaintiff subject only to an obligation to repair it by replacing the nut from time to time as it became loose, such repairing and replacing was a detail of the work which might be committed to an employee whose negligence would not make the employer liable. But, without stopping to consider at length whether this is so, it is quite clear that the second refusal did constitute error. Having the right to use the machine, the defendant could only be required to exercise reasonable care and prudence in detecting a loosening of the nut and in replacing the same, and the instruction should have been given as requested. It is suggested that this request assumes that the nut was tightened in the morning, and was

improper in that respect. There was no question upon the trial that the nut was tightened in the morning, not only an employee of the defendant, but the plaintiff himself swearing to this. The request immediately preceding the one under consideration (not quoted) was expressly predicated upon a finding by the jury that the nut was properly tightened in the morning before the accident, and when the request in question was made I have no doubt that the defendant's counsel by the words " after being tightened in the morning " assumed, and must have been understood as referring to, a finding by the jury of that fact, as a basis for the rest of the request. The idea having been clearly incorporated in the request immediately preceding was to be implied and understood in interpreting his following language.

One of the defendant's employees, Byron, testified that he had tightened this nut in the morning before the accident and that after the accident the bolt and nut were in place. Plaintiff's counsel attempted to contradict this evidence and impeach the witness by showing that he had made conflicting statements after the accident and some of the objections and exceptions taken in the course of this evidence are well founded. One of the witnesses by whom plaintiff sought to prove contradictory statements was the mother of the plaintiff. She stated that this witness Byron " was at her house a couple of weeks after this accident happened," and then testified to various material contradictory statements made by him at that time. The specific objection was taken to one or more of these questions that no foundation had been laid for it and that it was incompetent.

The only testimony in which the attention of the witness appears to have been called to the time and place of these alleged impeaching statements is as follows: " I was twice to Mr. Loughlin's house, but I can't exactly say whether it was two weeks or was a week or three weeks after. I don't remember that I talked with Mrs. Loughlin about this accident, how it happened. I don't remember that I told her that morning that this came down, etc." It thus appears

that plaintiff's counsel in interrogating the witness about what he had said upon some " morning " as a foundation for what was to come, did not specify to which one of the two visits mentioned by witness he was referring as the occasion of the statements. In fact the words " that morning " are so indefinite as to make it difficult for us to say that they referred to the occasion of either of the visits mentioned by the witness, but assuming that they did refer to one of them, it was necessary that the witness should be made clearly and fairly to understand which one of the occasions he was being interrogated about, and the failure to do this gave just ground for the objection and exception afterwards taken and which have been stated. (*Hart* v. *Hudson River Bridge Co.*, 84 N. Y. 56, 60 ; *Rice* v. *Rice*, 43 App. Div. 458.)

This same witness, Mrs. Loughlin, over defendant's objection and exception, was allowed to testify that the witness Byron told her upon the same occasion " that the press was now fixed all right and that it would not fall or injure any one again, or   *   *   *   words to that effect." I think that this evidence was erroneous, independent of the difficulty just referred to, because it placed before the jury the fact that the machine had been fixed or repaired after the accident, and, of course, it is well settled that such evidence is incompetent. (*Dougan* v. *Champlain Trans. Co.*, 56 N. Y. 1, 8 ; *Clapper* v. *Town of Waterford*, 131 N. Y. 382, 389.)

It may be said that this testimony was proper as indirectly contradicting the statement of the witness upon his direct examination that the nut was not off from the bolt at the time of the accident or before that. I think, however, that such purpose is too remote to sustain this statement of fact otherwise incompetent and of a character to be very influential with the jury.

The same witness was allowed to testify that upon the same occasion defendant's witness said to her " that he came near losing both his hands in the morning." This evidence was certainly very material and of a character very prejudicial to the defendant. If in some manner it had been limited to

saying that Byron had been caught, or had said that he had been nearly caught by the machine under the same circumstances alleged to have prevailed when plaintiff met his accident, the evidence might have been proper, but the record fails to show that any such limit was fairly placed upon it.

While plaintiff's counsel was summing up he said : " There is no evidence that he (the defendant) was insured, most of these people are. There is no evidence that there was anything of this kind here." The defendant's counsel excepted to this remark and asked that a juror be withdrawn, which application was denied by the court. Whereupon the plaintiff's counsel again said : " Many people get insured, but there is no evidence of any such thing in this case at all." The defendant's counsel again excepted to the remark, whereupon the court said : " There is no evidence and the jury will pay no attention to it." There can be no question, of course, but that these remarks were entirely improper, and that they were designed to influence the jury by considerations which were not legitimately before them. They were even more objectionable than is ordinarily the case, because where the defendant is a corporation it might make but little difference whether an insurance corporation was bound to indemnify it or not, whereas in the case of an individual defendant it might make it much easier to find an adverse verdict if the jury understood that an insurance company would be compelled to pay the verdict. It can scarcely be said that the remark was one of thoughtlessness, because it was deliberately repeated in substance after counsel had objected to it. Under such circumstances the trial court would have been amply justified in correcting much more vigorously than it did the imprudence of counsel, and either the trial court or the Appellate Division would have been quite justified in reversing the judgment.

The judgment should be reversed and a new trial granted, with costs to abide event.

Cullen, Ch. J., Gray, O'Brien, Edward T. Bartlett, Werner and Chase, JJ., concur.

Judgment reversed, etc.