charges for services of a family physician than the much higher scale of services of an operating surgeon. He performed no operation. The operation that was performed was performed by another surgeon of his selection; he himself being so worn out by his vigil of the night before that he was not in condition to perform it. The testimony of the numerous medical experts as to the value of the services rendered varied widely. Upon consideration of all that testimony and of all the facts in the case, I fix the compensation for such services at the sum of $750.

After deducting this amount from the sum of $2,000 remaining unpaid upon said mortgage, there remains due thereon the sum of $1,250, with interest. The plaintiff is therefore entitled to a judgment of foreclosure and sale for the amount named and interest. I do not think costs should be allowed to either side.

Let requests for findings be submitted, with proof of service.

---

BUMP v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Third Department. May 7, 1913.)

DAMAGES (§ 132*)—EXCESSIVENESS—PERSONAL INJURIES.

A verdict for $20,000, with interest, for the loss of a leg by a young man through defendant's negligence, was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Smith, P. J., and Kellogg, J., dissenting.

Appeal from Trial Term, Broome County.

Action by N. Marks Bump against the Delaware, Lackawanna & Western Railroad Company. From a judgment for plaintiff for $20,-573.92 damages and costs, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Stanchfield, Lovell, Falck & Sayles, of Elmira, for appellant.
W. J. & F. W. Welsh, of Binghamton, for respondent.

HOWARD, J. The books abound with instances where verdicts have been set aside because of improper remarks of counsel, and they abound, likewise, with instances where the courts have refused to disturb verdicts because of such remarks. Therefore the citation of precedents signifies but little. In the case at bar the trial judge promptly rebuked the counsel for his improper language, and in the charge he emphatically and distinctly instructed the jury to disregard the remarks, warning them that the language was intended to excite their prejudice. Generally, where the trial court has promptly rebuked counsel and has directed the jury to disregard such remarks, the appellate courts have refused to molest the verdict. This policy has been proclaimed by the unanimous opinion of this court in the recent case of Kuntz v. Howard, 143 App. Div. 830, 128 N. Y. Supp. 101. In the

case cited·in the dissenting opinion (Horton v. Terry, 126 App. Div. 479, 110 N. Y. Supp. 646) it does not appear that the trial judge in any manner corrected the abuse, either by instant rebuke to counsel or by sufficient instructions in the charge.

The language of counsel in this case was improper, unprovoked, ill-considered. What ·he said was apparently studied, deliberate, and premeditated. It was not calculated, however, as I view it, so much to inflame the passions and excite the prejudice as it was to give what counsel considered an appropriate touch and finish to the oration. , But, whatever may have been the design of counsel in making the remarks, they were out of place; they were illegitimate in their nature; they were no part of an honest argument. Such language should not go unnoticed by the courts; it deserves rebuke. But, because it seems necessary to reprimand counsel for his indiscretion, the occurrence should not be developed into an excuse either to reverse the verdict or take any part of it away from the plaintiff—a plaintiff who acted a part so manly and fair all through the trial. It is not well to exaggerate this incident beyond its natural proportions. We must assume· that jurors have common sense; and it does not seem possible to me that all of those 12 men sitting in the box could have been warped out of their course by a circumstance so insignificant and short.

It is. not reasonable to suppose that men fit to sit as jurors can be swerved and biased away from justice, as children and savages might be, by every little improper statement made by counsel in summing up; particularly this is so where the trial court denounces the counsel's language and cautions the jury against it. To assume that this ridiculous suggestion concerning the imaginary Phœbe Snow could have been taken seriously by the jury,·or have been a deciding factor with them, places the lowest possible estimate on the mental capacity of jurors. To force this plaintiff to consent to a reduction of the verdict, or to subject each of the litigants and the county to the expense of a new.trial because of this absurd suggestion, would be a determination which, I fear, would not be recognized as the ·product of judicial common sense, nor stand the test of public scrutiny.

If the defendant was negligent at all (and this is the question which has troubled me most), the assessment of damages was not extravagant. The plaintiff has only lost a leg; but that is much. He must go through life handicapped and lame. He was a bright, active, promising, healthy young man; now he is a cripple and a wreck. His physical symmetry, in which like all young men, he exulted, is destroyed. He can no longer leap and run; he must hobble and limp. To him this mutilation of his body is a frightful calamity; it annihilates all the glory of youth.· The estimate of the jury as to the damages was not unreasonable.

The judgment and order should be affirmed, with costs.

WOODWARD, J., concurs. LYONS, J., concurs in result. SMITH, P. J., dissents.

JOHN M. KELLOGG, J. (dissenting). The plaintiff, for the loss of a leg while in the employ of the defendant, has recovered a judg-

ment for $20,000 damages, with interest thereon and costs. His other leg was broken, but has mended, and he now has the full use of it. He is a bright young man, with a high school education, and, at the time of the accident, was earning $50 per month. He has lost a year and a half's time; his medical and other expenses amount to $500; his health and strength are now good; his only permanent injury is the loss of the leg. The defendant seeks a reversal of the judgment upon the ground that no negligence was shown, that the verdict is excessive, and that it is the result of prejudice, and not of the evidence.

The plaintiff's counsel, in summing up to the jury, used this language:

"Gentlemen of the jury, you are the only judges of these things. It does seem to me that, if 12 men can go into the jury room and find this construction not negligent, then we might as well remove the statue of Justice from the dome of the courthouse and erect in its place a statue of Phœbe Snow, the patron saint of the Delaware, Lackawanna & Western Railroad Company; we might as well cut upon the stone in front of the courthouse: 'Sacred to the interests of the D., L. & W., the road of anthracite at $6.50 per ton."

The defendant's counsel objected to the statement, claiming it was improper, and took an exception thereto, and requested the court to direct the jury to disregard it. The court said, "Yes." The plaintiff's counsel then said:

"What I said was that the jury were the judges, and that this was my opinion if such a thing should happen."

The defendant's counsel excepted to this reiteration, and the court said the statement was improper, and should not be made to the jury. In its charge the court said:

"Counsel for the plaintiff in his argument referred to Phœbe Snow and the statue of Justice; also to the price of coal. These were not mere oratorical flourishes; but they were intended to prejudice you in determining the facts submitted to you. You will see to it, therefore, that they do not. You will determine this question without regard to any prejudice and upon the evidence in the case."

The statement, apparently, was not a spontaneous utterance in the heat of discussion, but bears evidence of careful preparation and premeditation. As we said in Horton v. Terry, 126 App. Div. 479, 480, 110 N. Y. Supp. 646, 647:

"So long as counsel in their addresses to juries keep fairly within the issues and the evidence, large liberty of discussion should be afforded them; but when they depart entirely from the evidence in their arguments, and make remarks intended solely to incite the passions or prejudices of a jury, there is every reason, especially in a close case, why the court should intervene and protect a party from a verdict rendered against him which may have been influenced by such remarks, rather than by the evidence in the case."

The rights of the parties upon the evidence in that case were not clear. In summing up to the jury the plaintiff's counsel stated:

"The defendant is a wealthy brickman that has put the price of brick up, and that he is an importer of negro labor."

There was nothing in the case to justify the statements. This court reversed the judgment, on the ground that it was not clear that the verdict rested upon the evidence, but might be the result of prejudice, which the plaintiff's counsel had improperly aroused. In that case the defendant objected to the statement, and the court allowed an exception to it. It does not appear that any request was made for the withdrawal of a juror.

This question has frequently been before the courts, and it has been made plain that such conduct imperils a verdict. Hoyt v. Davis Mfg. Co., 112 App. Div. 755, 98 N. Y. Supp. 1031; Loughlin v. Brassil, 187 N. Y. 128, 79 N. E. 854; Cox v. Continental Ins. Co., 119 App. Div. 682, 104 N. Y. Supp. 421; Orendorf v. N. Y. C. & H. R. R. Co., 119 App. Div. 638, 104 N. Y. Supp. 222; Keenan v. Met. St. Street Ry. Co., 118 App. Div. 60, 103 N. Y. Supp. 61; Akin v. Lee, 206 N. Y. 20, 99 N. E. 85; Simpson v. Foundation Co., 201 N. Y. 479, 95 N. E. 10, Ann. Cas. 1912B, 321.

In Loughlin v. Brassil, supra, an action for negligence, where plaintiff's counsel in summing up said, "Many people get insured, but there is no evidence of any such thing in this case at all," the Court of Appeals held that the trial court or the Appellate Division would have been justified in setting aside the verdict for such improper remarks.

In Simpson v. Foundation Co., supra, the court determined that the plaintiff's attorney had conducted his examination in a manner intended to suggest to the jury that the defendant was insured. It said at page 490, of 201 N. Y., and page 15 of 95 N. E. (Ann. Cas. 1912B, 321):

"Evidence that the defendant in an action for negligence was insured in a casualty company, or that the defense was conducted by an insurance company, is incompetent, and so dangerous as to require a reversal, even when the court strikes it from the record and directs the jury to disregard it, unless it clearly appears that it could not have influenced the verdict."

And again at page 491 of 201 N. Y., and page 15 of 95 N. E. (Ann. Cas. 1912B, 321):

"As counsel in cases of this kind have been so often admonished as to the impropriety of suggesting, either by way of argument, or by way of questions to the jury, or in any other way, that the defendant was protected by insurance, it seems to be unnecessary to say more than that such a suggestion in the presence of the jury will render any verdict that has been obtained by the plaintiff valueless, as a violation of the rule will require a reversal of the judgment."

The statement in the case at bar is much more prejudicial than that in any of the cases cited. It is urged, however, that the defendant, by not moving for the withdrawal of a juror, has waived the objection. If such a motion had been made and denied, its denial would have been an error which would have called for the reversal of the judgment in its entirety. The court on its own motion might have withdrawn a juror. The plaintiff's counsel might have suggested the withdrawal of a juror to relieve the case from the effect of his misconduct; but, instead of doing that, he practically reiterated the statement, choosing to leave his case, as far as he could, to the prejudice, and not to the calm judgment, of the jurors. He was taking his

chances whether he would not gain more than would be lost by the situation he had created. By continuing the case, the court and the counsel tacitly understood that, if the result of the verdict showed that the jury had not been influenced by the improper remarks, then the incident was closed; but unless it was apparent that the irregular practice had caused no injury, then it would be a matter for further consideration. The defendant did not waive its right to a fair trial, but stood in the position of insisting that these remarks were improper, prejudicial, and against its rights. It is now a matter appealing to the conscience of the court to determine whether the defendant has had the fair and impartial trial to which it was entitled.

Horton v. Terry, supra, decided by this court, is on all fours with this case, except here the language used is more prejudicial. We cannot refuse to follow that case because the defendant here is a corporation, while in that case the defendant was a natural person. A corporation is not an outlaw. Every suitor is entitled to a fair and impartial trial; the best and the worst are entitled to equal justice. The decision of a court should rest upon the law and the facts; prejudice and passion have no part in it. The duty rests upon the court to see that every defendant is granted a fair and impartial trial.

The case upon the merits is not free from doubt, but we find that the evidence fairly establishes the negligence of the defendant. $20,000 for the loss of a leg and the temporary injury plaintiff received seems large. If we were satisfied that it was the deliberate judgment of the jury upon the facts alone, that would be a different matter. But the amount of the verdict under all the circumstances of the case is such that it carries with it the impression that it does not rest alone upon the evidence, but is, to some extent at least, the result of the prejudice aroused by the improper remarks of counsel. In the Simpson Case, supra, the court felt that the improper remarks were made for the purpose of enhancing the amount of the verdict. We take the same view of this case. It is difficult to say how much of the verdict is the result of prejudice, and how much results from the facts of the case.

We are permitted to disregard technical errors, and, so far as may be, to render the judgment which should have been rendered. It is so plain that the negligence of the defendant caused the plaintiff's injury that it does not seem justice to require a new trial. A new trial can be of no avail, except upon the question of damages. It is also so plain that the verdict is in part the result of prejudice that it does not seem right to allow it to stand in its entirety. As verdicts go, considering the condition of the plaintiff, a verdict of $14,000 would have been justified by the facts and would not be unreasonable. We cannot arbitrarily reduce the verdict. It is possible to effect such a reduction only by directing a reversal of the judgment unless the plaintiff stipulates to reduce it. In my opinion, the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event, unless the plaintiff stipulates to reduce the damages to $14,000, in which case the judgment is so modified, and, as so modified, affirmed, without costs.