## KUNSCHMAN v. UNITED STATES et al.

District Court, S. D. New York.
April 6, 1931.

Simone N. Gazan, of New York City, for libelant.

George Z. Medalie, U. S. Atty., of New York City (Frederick H. Cunningham, of New York City, of counsel), for respondents.

COXE, District Judge.

This is a suit in admiralty to recover damages for the death of Frederick W. Kunschman as a result of an accident on July 10, 1929, at 11:52 a. m., in the engine room of the motorship Triumph, owned by the government and operated by the Shipping Board. The libelant is Mary Kunschman, the mother of the deceased and administratrix of his estate, and the respondents are the United States and the Shipping Board Corporation.

The deceased was third assistant engineer on the Triumph at the time of his death, and was receiving a monthly salary of $155 besides his keep. He was 25 years old, and unmarried, and contributed $20 weekly towards his mother's support. The explosion occurred in the crank case of engine No. 4 as the Triumph was approaching Manila, and the deceased was so severely burned that he died two days later at the Manila Hospital.

Originally, the Triumph was steam driven but had just been overhauled and equipped with new Diesel engines, and was on her initial voyage to the Philippines after the installation. Prior to the accident, the vessel had covered over 15,000 miles with the new engines, and there had been no difficulty of any kind or warning of impending trouble.

When the vessel arrived at Hankow some days after the explosion, engine No. 4 was taken down, and it was then found that the piston of the air compressor was broken and that the inside of the cylinder was scorched and scratched. The crank case door had not been ruptured or torn off, but was corrugated and distorted from the explosion. It was also found that one side of the piston was one-fourth of an inch thick and the other side one-half an inch thick.

It is insisted by the libelant that the accident was caused (1) by the break in the piston due to its uneven thickness and defective construction; and (2) by the faulty design of the engine which did not make adequate provision for ventilating the crank case and releasing the trapped gases. The respondents contend, on the other hand, that liability can be predicated only on negligence, and that although concededly the mere happening of the accident in the manner shown is sufficient to create an inference of negligence, Rose v. Stephens (C. C.) 11 F. 438; The Rambler (C. C. A.) 290 F. 791, still the respondents have completely met and rebutted this inference by proving that in the selection, design, and installation of the engine every reasonable precaution was taken to

make it safe and sound, and that no negligence is therefore properly attributable to the respondents.

When the government decided in 1927 to install Diesel engines in various Shipping Board vessels of the type of the Triumph, Cox & Gibbs, naval architects, and Admiral Taylor, were requested to prepare the necessary plans. The Gibbs firm had previously been employed by the Shipping Board in advisory work, and was unquestionably qualified by ability and experience to take charge of the conversion of the vessels and to supervise the installation of the new engines. After thoroughly canvassing the field for the best type available, the McIntosh & Seymour engines were selected as the most suitable, and appropriate contracts were thereupon entered into with that company. The engines were of standard design, and practically identical with those previously manufactured by McIntosh & Seymour, and in extensive use in this country, except for the addition of two cylinders, making eight in all, and the engines were to be specifically built for the government. During the course of manufacture in the McIntosh & Seymour shops at Auburn, the Gibbs firm was constantly in touch with the work, and Mr. Cook, a member of the Gibbs staff, was detailed to the McIntosh & Seymour plant to inspect and test the materials going into the engines as they were being manufactured.

The engines were installed in the Triumph at Boston in the early part of 1929, and were there tested, inspected, and approved by representatives of the American Bureau of Shipping. The bureau had previously approved the design and plans of the engines, and, before they were finally accepted by the government, issued the requisite certificate of approval. Furthermore, the vessel was given preliminary trials at Boston, at which the engines proved entirely satisfactory. Afterwards, the vessel proceeded to Baltimore, from there to New York, thence to Norfolk, and shortly afterwards out through the Canal to Honolulu, and then on to Manila. During this entire voyage, covering a period of over 45 days and a distance of more than 15,000 miles, engine No. 4 was continuously in operation and functioned perfectly.

The libelant insists that the piston was defective in that one side was thicker than the other. But it is by no means clear that the piston broke because of this difference in thickness; and even if it did, I do not think the respondents can be charged with negligence in that respect, especially as they were not the manufacturers. The contract to build the engines was placed with a competent, independent contractor, and the respondents were not liable for defects which reasonable care on their part would not have disclosed. If this were not so, a shipowner would be liable as an insurer of the adequacy or safety of the machinery of his vessel, which clearly is not the law in the federal courts. Burton v. Greig (C. C. A.) 271 F. 271; The Henry B. Fiske (D. C.) 141 F. 188. Nor is a different rule to be applied because Mr. Cook, an employee of the Gibbs firm, was present at the McIntosh & Seymour plant during the construction of the engines, testing and inspecting the materials. He was not the agent or servant of the respondents so as to make them liable in damages in case his inspection failed to disclose defective materials or workmanship.

I do not think, either, that the respondents are chargeable with negligence in connection with the design of the engines. They committed this work to responsible naval architects, and are not liable for their negligence. Burke v. Ireland, 166 N. Y. 305, 59 N. E. 914. Furthermore, there was a sharp conflict in the testimony as to whether there was adequate provision for releasing the trapped gases in the crank case. In any event, the use of vents in the crank case was not so clearly indicated that a failure to install them can be regarded as negligence on the part of the respondents. It is settled, also, by abundant authority that alterations made after an accident are incompetent to show negligent construction at the time of the accident. Columbia & P. S. R. Co. v. Hawthorne, 144 U. S. 202, 12 S. Ct. 591, 36 L. Ed. 405; Loughlin v. Brassil, 187 N. Y. 128, 79 N. E. 854; Wigmore on Evidence, vol. 1, § 283.

I am, therefore, reluctantly constrained to hold that the libelant cannot recover; and there may be a decree for the respondents dismissing the libel.