**Wolf G. TILLMAN, Plaintiff,**

v.

**The FIREMAN'S FUND INSURANCE COMPANY, Defendant.**

**No. 82 Civ. 7700 (GLG).**

United States District Court, S.D. New York.

July 19, 1984.

Lloyd I. Isler, P.C., New York City (Lloyd I. Isler, Sidney S. Rubin, New York City, of counsel), for plaintiff.

Gates, Singer, Deitsch, Goldberg & Fass, New York City (Richard M. Gates, Kenneth R. Feit, New York City, of counsel), for defendant.

OPINION

GOETTEL, District Judge:

The defendant, The Fireman's Fund Insurance Company ("FFIC"), moves for summary judgment against the plaintiff, Wolf G. Tillman ("Tillman"). FFIC's motion, as originally filed, is based upon three separate grounds. In particular, FFIC contends that Tillman has failed to state a claim upon which relief can be granted, that his suit is barred because of his failure to comply with statutorily imposed notice requirements, and that it is also barred because it was not filed within the limitations period imposed by the terms of the very policy upon which he attempts to base his recovery.[1] Establishment of any one of these grounds would provide a sufficient basis for granting FFIC's motion. Since the Court determines that FFIC has demonstrated Tillman's failure to state a cause of action, the motion for summary judgment is granted on that ground alone, without considering the other grounds.

---

**1.** Each of these three grounds corresponds to one of the eight affirmative defenses (more particularly: the First, Fourth, and Fifth) asserted in FFIC's Answer.

## BACKGROUND

This case concerns a frustrated owner's attempt to obtain from an insurance company a judgment that was entered not against the insurance company but rather against one of its former insureds. The question is whether the insurance company, FFIC, is liable for a judgment entered in favor of the owner, Tillman, and against the insured, Lincoln Warehouse Corporation ("Lincoln"), for the purpose of compensating Tillman for the loss of property stored with Lincoln.

The story begins in 1944, when Tillman's mother died and left an extensive and valuable collection of pottery and china. Her executor, for reasons not revealed in the papers, caused the collection to be stored in one of Lincoln's warehouses in New York City, where it was kept for many years.

In 1963, when the estate was settled, Tillman became the owner of the collection. After receiving notification of this change in ownership, Lincoln held the collection in Tillman's name. Once, in 1966, he came briefly to look at one of the thirteen barrels in which the collection was stored, but he apparently did not otherwise check on the collection until May 23, 1969. On that date, when he came to pick up the collection, he examined the contents of the barrels only to find that the entire collection was missing.

In May of 1970, Tillman sued Lincoln for the value of the lost collection. More than ten years later, on February 6, 1981, he obtained a judgment against Lincoln for approximately $1.5 million. One and a half years later, in September of 1982, after execution of the judgment had been duly issued against the property of Lincoln, it was returned unsatisfied. To this day, the judgment against Lincoln remains wholly

unpaid, and Lincoln claims that it is insolvent.

On November 19, 1982, Tillman commenced this suit against FFIC, setting forth two causes of action. In the first, he alleges that an FFIC liability policy issued to Lincoln was in full force and effect at the time of the loss of the collection and that FFIC is therefore liable to Tillman for the judgment of $1.5 million. Tillman's claim is that he is a third-party beneficiary of the policy and thus FFIC is liable to him under its terms. In the second cause of action, he alleges that no limitations period imposed by the terms of the policy should be construed to apply to his claim because FFIC had previously denied the existence of any such policy when directly questioned about it and, thus, should not now be able to take advantage of the 12-month limitations period for the commencement of suit that the policy imposes.[2]

The facts with respect to this insurance policy, either as alleged by the plaintiff or as set forth by the defendant and not denied by the plaintiff, are as follows. In 1958, FFIC issued Policy No. FWP 2629–C (the "policy") to Lincoln. The policy provided two types of coverage for property stored in Lincoln's warehouses. Under the first provision, FFIC agreed to insure any stored property upon which its owner and Lincoln agreed to effect insurance for the account of the owner. Defendant's Exhibit 4, FFIC Policy No. FWP 2629–C, Coverage Endorsement "A". Clearly, FFIC was not providing this type of coverage for the Tillman collection. Tillman has presented no evidence to suggest that either he or the executor of his mother's estate ever requested such coverage under the FFIC policy or paid the requisite premium for such coverage. Furthermore, there is ample evidence that similar coverage was obtained

---

**2.** The language of Paragraph 21 of Tillman's Complaint might lead one to believe that Tillman seeks damages under this second cause of action, as well as under the first. The Court, however, chooses to take Tillman at his word when he states that his second claim is not one for damages under a theory of fraud, but rather a prayer for an equitable ruling by the Court

that the insurance policy's limitations period should not be applied because FFIC fraudulently concealed the existence of the policy. In other words, the Court reads Tillman's second "cause of action" to be no more than an anticipatory response to FFIC's statute of limitations defense to his first cause of action.

separately under a policy issued by the American Surety Co. and that Tillman has already collected $150,000 under that policy.

Under the second provision of the FFIC policy, FFIC agreed to insure Lincoln against any liability it incurred as a warehouseman or bailee for any physical loss of or damage to property stored for its customers on its premises.[3] *Id.*, Coverage Endorsement "B". Under this second provision, however, coverage was expressly limited to Lincoln and not extended to its customers. "The coverage provided … is intended only for the protection of the Assured [Lincoln] and no action or proceeding based on the provisions hereof shall be brought in the name or for the benefit of the Assured's Customers or of any other person or corporation." *Id.*

Despite this restrictive language, Tillman argues that the second provision of the policy makes him a third-party beneficiary of the policy. FFIC naturally argues to the contrary. FFIC contends that the policy was a contract solely between it and Lincoln and that no one other than Lincoln had a legal or equitable interest in the policy. In FFIC's view, Tillman was not and is not a third-party beneficiary of the policy and so has no standing to make a claim based on the common law rights of such beneficiaries.

In addition, FFIC contends that, even if the second provision had covered any liabilities incurred by Lincoln before it cancelled the FFIC policy in 1965, it could not possibly have covered liabilities incurred thereafter. Tillman's rights, FFIC argues, could not be greater than those of Lincoln, and once Lincoln cancelled the policy and forfeited coverage, no third-party who thereafter filed a claim could possibly have any rights under the policy.[4]

Finally, as noted earlier, FFIC contends that even if Tillman were considered a third-party, his claim would have to be dismissed because he failed to file it within one year of the discovery of the loss, as is required under the insurance policy.

To these arguments Tillman responds by claiming that he is a proper third-party beneficiary of the policy. He also argues that his loss occurred before the cancellation of the policy in September of 1965 and that he can prove this fact. Finally, he claims that he could not have instituted this suit any sooner because he was misled about the existence of the policy both in 1969 and later in 1981.

DISCUSSION

At the outset, the Court notes that the plaintiff's presentation of his case is most puzzling. Initially, FFIC interpreted Tillman's first claim as being made pursuant to section 167 of New York's Insurance

---

3. While the policy limits the amount of recovery for each lost item, the applicability of the limit is not at issue here.

4. In this vein, the submissions indicate that the policy was cancelled at Lincoln's request in September of 1965, almost four years before Tillman discovered the loss of the collection, and almost five years before he filed his original claim against Lincoln. Although Tillman speculates that the policy may not have actually been cancelled at that time, he offers no evidence in support of his hypothesis. On the other side, FFIC has submitted affidavits from two individuals attesting to their knowledge of the policy having been cancelled in September of 1965, Gates Affidavit at 6; Schwend Affidavit at 3, as well as a photocopy of a conformed copy of the policy, which is stamped "CANCELLED" and dated "9/1/65", a photocopy of an FFIC cancellation slip indicating that the policy was can-

celled on 9/1/65, and a subsequent agreement between Lincoln and FFIC which states that the policy was cancelled "on or about the 15th day of September, 1965…." Defendant's Exhibits 4, 5, and 6. Confronted by mere speculation on the one hand and an abundance of evidence to the contrary on the other hand, the Court has no hesitation in concluding that the policy was cancelled in September of 1965.

The submissions also show that on November 14, 1967, Lincoln and FFIC entered into an agreement determining which claims and actions brought against Lincoln were covered by the cancelled FFIC policy and declaring that FFIC could not be held liable for any other claims that had been, or might later be, brought by customers of Lincoln. Defendant's Exhibit 6. This agreement was reached one and a half years before Tillman discovered the collection was missing and two and a half years before he filed his original claim.

Law, N.Y.Ins.Law § 167 (McKinney 1966), and, accordingly, addressed its motion for summary judgment to that provision. Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 2–14. However, in his responsive papers, Tillman clearly states that his complaint makes no mention of section 167 and that he is not making a claim under that statute, but rather under common law theories concerning third-party beneficiaries. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 3–7. As the following analysis shows, however, this declaration virtually guarantees the success of FFIC's motion for summary judgment. In effect, by disclaiming any resort to section 167 (apparently in an effort to defeat the fairly strong arguments FFIC has raised for dismissing a section 167 claim), Tillman has checkmated himself.

■ It has long been the general rule that, unless a statute or policy states otherwise, liability coverage of the sort provided by the FFIC policy is granted to the insured only, and that only the insured has a cause of action against the insurer and a right to sue under the policy. *Morton v. Maryland Casualty Co.*, 1 A.D.2d 116, 124–25, 148 N.Y.S.2d 524, 531–33 (1955), *aff'd*, 4 N.Y.2d 488, 176 N.Y.S.2d 329, 151 N.E.2d 881 (1958). "[A]s a general rule, in the absence of statutory or applicable policy provisions to the contrary, one who suffers injury within the provisions of a liability insurance policy is not in privity of contract with the insurer of the alleged tort feasor, [sic] and cannot bring an action directly against the insurer on the claim." *Aetna Insurance Co. v. Pennsylvania Manufacturers Association Ins. Co.*, 456 F.Supp. 627, 634 (E.D.Pa.1978). In other words, only if there is statutory or policy language to the contrary does a third-party have the right to sue the insurer directly.

What that means in this case is that we have to look to the applicable language of the statute and the policy to determine whether a right of direct action has been created. Turning first to New York's Insurance Law, we find it most understandable that FFIC originally inferred that Tillman was making a section 167 claim. This provision (originally section 109) was enacted for the express purpose of creating a limited right of direct action. *Morton v. Maryland Casualty Co.*, supra, 1 A.D.2d at 124–26, 148 N.Y.S.2d 531–33 (1955). Before this statute was enacted, a direct action suit by an injured party against the insurer of the party who allegedly caused the injury "was unknown to the common law." *Thrasher v. United States Liability Insurance Co.*, 19 N.Y.2d 159, 166, 278 N.Y.S.2d 793, 798, 225 N.E.2d 503, 506 (1967).

What section 167 does, therefore, is to specify exactly when a third-party may bring such a suit and exactly what procedural conditions must be satisfied.[5] In par-

---

**5.** Section 167 provides in pertinent part:

1. No policy or contract insuring against ... liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions which are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:

(a) A provision that the insolvency or bankruptcy of the person insured ... shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract.

(b) A provision that in case judgment against the insured [for] ... loss or damage occasioned during the life of the policy or contract, shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

(c) A provision that notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer.

ticular, subsection 167, subd. 7(a) creates the right of a judgment creditor of the insured to sue the insurer directly.[6] However, this right is conditioned upon compliance with certain requirements, such as giving the insurer thirty days written notice of the judgment before commencing an action, N.Y.Ins.Law § 167, subd. 1(b).

It was the perceived failure of Tillman to comply with this requirement (as well as his failure to commence his action within the one year limitations period specified in the policy) that formed much of the original basis for FFIC's motion. Rather than responding directly to this objection, however, Tillman has attempted to sidestep it by contending that as a third-party beneficiary of the policy he need not make a section 167 claim or meet that statute's conditions.

■ The problem with this argument, of course, is that it is precisely section 167 that gives him a right of direct action. Without it, and without a showing that he has complied with its conditions, he simply cannot make out a proper claim upon which relief can be granted. *Id.* As one New York court has held, section 167 and the cases decided thereunder "firmly establish it to be the public policy of this State that a direct action against an insurer can be maintained in our courts only when the conditions of our statute are complied with." *Morton v. Maryland Casualty Co., supra,* 1 A.D.2d at 126, 148 N.Y.S.2d at 533. Tillman does not deny that he failed to serve FFIC with notice of the entry of judgment against Lincoln thirty days before he commenced this action, as is required under subsection 167, subd. 1(b). That failure by itself is fatal to any section

167 claim. *Thrasher v. United States Liability Insurance Co., supra,* 19 N.Y.2d, at 165, 278 N.Y.S.2d at 798, 225 N.E.2d at 506; *McNamara v. Allstate Insurance Co.,* 3 A.D.2d 295, 298–300, 160 N.Y.S.2d 51, 54–56 (4th Dep't 1957).

■ Of course, as noted earlier, the policy itself must also be examined to determine whether it, as opposed to section 167, creates a right of direct action. After all the insurer and the insured may initially bargain to create such a right in certain third parties. *See, e.g., Stainless, Inc. v. Employers Fire Insurance Co.,* 69 A.D.2d 27, 34, 418 N.Y.S.2d 76, 81 (1st Dep't 1979), *aff'd,* 49 N.Y.2d 924, 428 N.Y.S.2d 675, 406 N.E.2d 490 (1980), and cases cited therein. However, such an intention must be clearly expressed in the language of the policy itself before a court can hold that a right of direct action was intended by the parties. *See, e.g., Waring v. The Indemnity Fire Insurance Co.,* 45 N.Y. 606, 612–13 (1871). In the instant action, though, what the policy clearly expresses is FFIC and Lincoln's intention *not* to create such a right of direct action. Thus, even if one views this policy as a bailee's liability insurance policy, as Tillman urges, his rights under the policy as the owner of lost property were always limited to the distribution of whatever benefits Lincoln recovered under the policy. 18 *Couch on Insurance 2d* (Rev. ed.) § 74:323 (1983). In other words, where, as here, a policy provision expressly prevents third parties from directly suing the insurer, the owner of property insured by the warehouseman or bailee has no common law right of direct action. *Id.; Lewis v. Home Insurance Co.,* 199 A.D. 556, 564,

---

(d) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured or by any other claimant thereunder if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

\* \* \* \* \* \*

7. Subject to the limitations and conditions of subsection one, paragraph (b), an

action may be maintained by the following persons against the insurer upon any policy or contract of liability insurance which is governed by said paragraph (b), to recover the amount of a judgment against the insured....

(a) Any person who ... has obtained a judgment against the insured ... for damages for ... loss or damage occasioned during the life of the policy or contract....

N.Y.Ins.Law § 167 (McKinney 1966).

**6.** *See supra* note 5.

192 N.Y.S. 170, 176 (1st Dep't), *aff'd*, 234 N.Y. 498, 138 N.E. 421 (1922).

Thus it is that we come full circle and determine that only if Tillman had brought a proper section 167 claim could he bring suit against FFIC. Having failed to do so, he has simply failed to state a claim upon which relief can be granted.

CONCLUSION

Accordingly, FFIC's motion for summary judgment is granted on the ground that Tillman has failed to state a legal claim.[7] The Clerk shall enter judgment for the defendant.

SO ORDERED.

---

**7.** It almost goes without saying that because Tillman's second claim is absolutely dependent upon his first claim, *see supra* note 2, dismissal of the first necessarily results in dismissal of the second. Consequently, the Court need not, and does not, reach Tillman's contention that genuine issues of material fact have been raised concerning his claim that FFIC initially fraudulently concealed the existence of the policy.