DONALD MORTON, Respondent, *v.* MARYLAND CASUALTY COMPANY, Appellant.

Second Department, December 29, 1955.

*John P. Wourms* for appellant.

*Joseph N. Friedman, Beatrice Rothaus* and *Harry H. Lipsig* for respondent.

UGHETTA, J. The primary question here presented is whether an action may be maintained in the courts of this State under a Louisiana statute which gives a right of direct action by an injured person against a liability insurer for the damages he has sustained, irrespective of whether or not a judgment has been first obtained against the insured.

Section 655 of title 22 of the Louisiana Revised Statutes of 1950, reads as follows: " No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured, shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer. *The injured person or his or her heirs,*

*at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido.* This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state." (Emphasis supplied.) Sub-section E of section 983 of the same statute provides: "No certificate of authority to do business in Louisiana shall be issued to a foreign or alien liability insurer until such insurer shall consent to being sued by the injured person or his or her heirs in a direct action as provided in Section 655 of this Title, whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not, and whether or not such policy contains a provision forbidding such direct action, provided that the accident or injury occurred within the State of Louisiana. The said foreign or alien insurer shall deliver to the Secretary of State as a condition precedent to the issuance of such authority, an instrument evidencing such consent."

Appellant is an insurance company organized under the laws of the State of Maryland, authorized to conduct business in the State of New York and also privileged and licensed to transact business in the State of Louisiana. In conformity with the last quoted statute, it executed and filed with the Secretary of State of the State of Louisiana a consent to be sued in a direct action reading as follows: "That this said corporation does consent to its being sued *in the State of Louisiana* by an injured person or his or her heirs in a direct action as provided by the laws of the State of Louisiana, particularly R. S. 22:655, whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not, and whether or not such policy contains a provision forbidding such direct action,

provided that the accident occurred within the State of Louisiana.'' (Emphasis supplied.) Appellant issued a comprehensive automobile liability policy to the State of Louisiana and/or Louisiana State University by the terms of which it agreed to indemnify the insured should it become liable for personal injuries due to negligence in the ownership or operation of a certain motor vehicle owned by the university. This contract contained the following provision: '' Action against Company. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.''

Respondent is a resident of Brooklyn, New York, who at the time of the accident was a student in the university. On June 19, 1953, while on an assignment connected with his studies, he was a passenger in the aforesaid motor vehicle, which was being driven by an instructor employed by the university. The car became involved in an accident in the parish of Natchitoches, State of Louisiana, as a result of which he sustained personal injuries. He thereafter brought this action in the Supreme Court, Kings County. The alleged tort-feasors are not named as defendants.

A motion by appellant for summary judgment was denied by Special Term on the ground that there is a disagreement between the parties as to whether the Louisiana statute is substantive or procedural and as to whether the requirement that the action be brought in a particular parish in Louisiana is jurisdictional, and that in the circumstances the interpretation to be given to the statutes and common law of Louisiana are factual matters which should be established upon a trial.

The reasons advanced do not warrant a denial of the motion. There is no dispute about the language of the statute, which is before the court. Judicial decisions germane to the issue are presented. The discretion of Special Term should have been

exercised, as is permitted by section 344-a of the Civil Practice Act, to take judicial notice of these matters (*Pfleuger* v. *Pfleuger,* 304 N. Y. 148).

The statute under consideration created a substantive right (*West* v. *Monroe Bakery,* 217 La. 189; *Lumbermen's Cas. Co.* v. *Elbert,* 348 U. S. 48; *Miller* v. *Commercial Std. Ins. Co.,* 199 La. 515). The question is whether the substantive right so conferred is confined to the authorization to bring a direct action against the insurer, while the requirement that the action be brought in the parish where the accident or injury occurred or in the parish where the insured has his domicile is purely procedural so that the venue is to be governed by the law of the forum, or whether the latter requirement is a part of the substantive right. In *West* v. *Monroe Bakery* (*supra*) the court said (p. 191) that the substantive rights conferred " become vested at the moment of the accident * * * *subject only to such defenses as the tort-feasor himself may legally interpose.*" The determination in that case was that the insurance carrier could not escape liability because of the failure of the insured to comply with the terms of the policy by giving notice of the accident as soon as practicable after it occurred. In other words, when the court said that the substantive rights became vested at the moment of the accident, it meant that those rights were not contingent on, or subordinate to, any stipulation between the insurer and the insured contained in the policy contract. Quoting from *Edwards* v. *Fidelity & Cas. Co.* (11 La. App. 176, 177), it was pointed out (*supra,* pp. 197–198):

" ' If the failure of Monahan to give the insurer notice of the accident operates to deprive plaintiff of such rights, as, under the statute and under the policy, he would otherwise have had, then the right, which the statute creates and which the policy recognizes, is *of doubtful value because the existence of that right in one person depends upon the actions of another.* (Italics mine.) * * * It is quite true that Monahan's failure to give notice to his insurer would have prevented his recovery from the insurer, had he himself paid the judgment * * * but that is because Monahan had so contracted. As between the parties to a contract, the contract itself is the law of the case. Here, however, the law of the case is not found solely within the four corners of the policy of insurance, but is contained primarily in the statute to which we have referred.' " There is nothing in the facts of that case or in the language of the opinion to indicate that the substantive right which vested on the happening of the accident was not the limited right to bring

the action in the parishes designated by the Legislature. It is our view that the intent was that the right and the remedy are so united that the right cannot be enforced except in the manner and before the tribunal designated by the act. The Supreme Court of Louisiana so held in *Miller* v. *Commercial Std. Ins. Co.* (199 La. 515, *supra*) — certainly insofar as the institution of the action in a parish in Louisiana other than one of those specified in the statute was concerned.

The Supreme Court of the United States, in *Tennessee Coal Co.* v. *George* (233 U. S. 354), had under consideration the effect of provisions of the laws of the State of Alabama. It appears from an examination of the Alabama statutes as they then existed that section 3910 of the Code of Alabama, enacted July 27, 1907, provided as follows: " Liability of master or employer to servant or employee for injuries.— When a personal injury is received by a servant or employe in the service or business of the master or employer, the master or employer is liable to answer in damages to such servant or employe, as if he were a stranger, and not engaged in such service or employment, in the cases following: (1) When the injury is caused by reason of any defect in the condition of the ways, works, machinery, or plant connected with, or used in the business of, the master or employer." This section was a part of chapter 80 of the code, entitled " Employer and Employe."

Section 6115 of the code provided: " Venue of actions under sections 2486 (27) and 3910 (1749).— All actions brought under sections 2486 (27) and 3910 (1749) must be brought in a court of competent jurisdiction within the State of Alabama, and not elsewhere." This section was incorporated in article 1 of chapter 146 of the code entitled " Venue "; which contained many provisions regulating the venue of various types of action, together with provisions for change of venue.

An action was brought under section 3910 in the State of Georgia, where the plaintiff recovered judgment. On a writ of error to the Court of Appeals of the State of Georgia, the Supreme Court of the United States decided that the jurisdiction of the court in which the action was brought was to be determined by the law of that court's creation, and that that jurisdiction could not be destroyed by the extraterritorial operation of a statute of the State creating the right of action. All that was actually held was that the Alabama code, by a section in the part of the code prescribing and regulating procedural matters, could not destroy the right to sue in another State on a cause of action created in a chapter devoted to substantive

rights. By incorporating the provision relating to venue in the part of the code dealing solely with remedies, an intent was evidenced that this was not a part of the substantive right.

In the case at bar, the requirements as to where the action must be brought are not only incorporated in the same section which creates the substantive right — they are a part of the same sentence. The majority opinion in *Miller* v. *Commercial Std. Ins. Co.* (199 La. 515, *supra*) stated, at page 521: " If, by writing into the act this special provision, the Legislature did not intend that such actions should be brought only in the parish where the accident or injury occurred or in the parish where the insured had his domicile and not elsewhere, then that provision of the act was inserted for no purpose at all." In a concurring opinion, Mr. Justice McCALEB said (at pp. 528–529): " The only reason why the suits may be brought directly against the defendant insurance company is because of the special provisions of Act No. 55 of 1930. The right accorded by that statute to sue the insurance company directly does not change, and should not be held to convert, the plaintiffs' cause of action from one in tort to a case in contract under an accident insurance policy. Plaintiffs' cause of action remains the same. The statute merely grants to plaintiffs an additional privilege to proceed not only against the wrongdoer but also against the company indemnifying him against loss within the terms and conditions of the insurance policy. In creating this additional right, the Legislature restricted the plaintiffs' choice of the forums where the right could be asserted at their option to the parish in which the alleged tort-feasor or assured resided or the parish in which the accident occurred."

It seems clear that the intent of the Louisiana Legislature was that the mandate of the statute that the action be brought in specified parishes constituted an integral part of the substantive right conferred and that the vesting of the right *at the moment the accident occurred* was the vesting of a right to bring the action in the parishes named. This conclusion is reinforced by the cases holding that where a right of action for wrongful death incorporates a limitation of time within which such action must be brought, the limitation is an integral part of the right and controls the time for bringing the action in another State which may have a different and longer period (*Weiss* v. *Baviello,* 133 N. Y. S. 2d 344, affd. 286 App. Div. 1024; *Schwertfeger* v. *Scandinavian Amer. Line,* 186 App. Div. 89, affd. 226 N. Y. 696), despite the general rule that the time prescribed within which an action must be brought is not of

the essence of the right to maintain the suit, but is merely a limitation upon the remedy (see *Sharrow* v. *Inland Lines,* 214 N. Y. 101).

Nor can the effect of the consent to be sued *in the State of Louisiana* filed by appellant as a condition precedent to its conducting business in that State be ignored. This right accorded persons injured in Louisiana is in derogation of other terms of the standard policy, particularly the above-quoted provision relative to rights of action. It should not be extended beyond the clearly expressed intent of its terms unless the statutory provisions demand that this be done. But the consent is in strict conformity with the requirements of the law. Subsection E of section 983 provides for the filing of the consent to be sued " as provided in Section 655 "; the latter section permits a direct action to be maintained only in the parishes named. Respondent's rights against the insurer should be limited to the express terms of the latter's consent.

Furthermore, we are of the opinion that the right of action conferred by the statute under consideration is objectionable to the public policy of this State, and that our courts should accordingly decline to take jurisdiction of an action to enforce the same. The leading case on this subject is *Mertz* v. *Mertz* (271 N. Y. 466), holding that it was contrary to our public policy to enforce a right of action created by a Connecticut statute whereby a wife was given a right of action for negligence against her husband. As was pointed out in that case (citing *People* v. *Hawkins,* 157 N. Y. 1, and *Straus & Co.* v. *Canadian Pacific Ry. Co.,* 254 N. Y. 407) : " ' when we speak of the public policy of the State, we mean the law of the State, whether found in the Constitution, the statutes or judicial records ' " (p. 472). The subject of insurance protecting a tort-feasor from pecuniary punishment or damages which he has inflicted has always been regarded as a touchy one in this State. Perhaps the most striking example is the rule that evidence that a defendant is insured or an intimation to that effect, is ordinarily inadmissible and improper in an action for damages for negligence. But the bald statement of the rule does not convey the weight which our courts have accorded the principle. In *Simpson* v. *Foundation Co.* (201 N. Y. 479, 490) the court said: " Evidence that the defendant in an action for negligence was insured in a casualty company, or that the defense was conducted by an insurance company, is incompetent and so dangerous as to require a reversal *even when the court strikes it from the record and directs the jury to disregard it,* unless it clearly appears

that it could not have influenced the verdict.'' (Emphasis supplied.) And in *Cosselmon* v. *Dunfee* (172 N. Y. 507) the following: '' Counsel for plaintiff asked a witness for defendants this question: ' Do you know whether they carry insurance for accident to their employees? ' This question was objected to as incompetent and objection sustained. While the learned trial judge made a proper disposition of the matter, nevertheless the propounding of the question was calculated to convey an improper impression to the jury. The inquiry into the matter of insurance is not material and the practice of asking a question that counsel must be assumed to know cannot be answered is highly reprehensible, and where the trial court or Appellate Division is satisfied that the verdict of the jury has been influenced thereby it should, for that reason, set aside the verdict.'' In *Akin* v. *Lee* (206 N. Y. 20, 23): '' Such evidence, almost always, is quite unnecessary to the plaintiff's case and its effect cannot but be highly dangerous to the defendant's; for it conveys the *insidious suggestion* to the jurors that the amount of their verdict for the plaintiff is immaterial to the defendant. It was a highly improper attempt on the plaintiff's part to inject a foreign element of fact into his case, which might affect the jurors' minds, if in doubt upon the merits, by the *consideration that the judgment would be paid by an insurance company.*'' (Emphasis supplied.) See, also, *Rodzborski* v. *American Sugar Refining Co.* (210 N. Y. 262) where the court at pages 268–269 quoted with approval from the *Simpson* case (*supra*); *Lerner* v. *Morris* (283 App. Div. 885) where this court said at page 886: '' It was error by counsel to *suggest the possibility* that the defendant was insured '' (emphasis supplied), and to the same effect as the last-cited case see *Loughlin* v. *Brassil* (187 N. Y. 128), and *Tacktill* v. *Eastern Capitol Lines* (260 App. Div. 58).

These cases have been referred to not because we deem them to be applicable to the facts here presented but solely to emphasize the great importance placed on the necessity of keeping from a jury any inkling that the defendant is insured, for the purpose of shedding some light on our public policy on the general subject. To our mind it is persuasive evidence that we should decline to enforce the right of action created by the foreign statute under consideration.

More important, however, is the history of our policy with respect to direct actions against insurance companies in this State. Prior to the enactment of chapter 524 of the Laws of 1917, an action against an insurer could not be maintained by the injured party or his representative even though judgment

had been recovered against an insolvent insured for the reason that "There was no privity between the plaintiff and the defendant through the insurance contract. It was a matter between insurer and insured only" (*Burke* v. *London Guar. & Acc. Co.,* 47 Misc. 171, 173, affd. 126 App. Div. 933, affd. 199 N. Y. 557). While this rule no doubt represented the public policy of this State prior to 1918 (*Mertz* v. *Mertz,* 271 N. Y. 466, *supra*), it nevertheless resulted in certain mischiefs and injustices which the Legislature sought to correct. If the insured was insolvent, the insurer in effect was released (*Jackson* v. *Citizens Cas. Co.,* 277 N. Y. 385). In one case (*Roth* v. *National Automobile Mut. Cas. Co.,* 202 App. Div. 667, appeal dismissed, 235 N. Y. 605), the court went so far as to suggest (202 App. Div. 669) that the above-mentioned statute was enacted on the advice of the Superintendent of Insurance " ' to eliminate evil, which was becoming a general practice among insurance companies, *i. e.,* the practice on the part of insurance companies with assureds, who were liable to pay a substantial amount for an injury sustained, to put the assured through bankruptcy, thereby precluding a recovery on the part of the injured by reason of the fact that an execution against the assured would be returned unsatisfied ' ' ".

The statute above cited added a provision to the Insurance Law (§ 109, now § 167) which required that all liability policies must contain a provision to the effect " that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages " and " in case of such insolvency or bankruptcy, an action may be maintained by the injured person against " the carrier. The constitutionality of this law was upheld on the ground that " the assumption of liability by the Insurance Company under Section 109 is entirely voluntary. It need not engage in such insurance if it chooses not to do so " (*Merchants Mut. Automobile Liability Ins. Co.* v. *Smart,* 267 U. S. 126, 130). Since this provision was originally enacted, the courts have consistently accorded a strict interpretation to it. For example, it has been held that failure of the insured to co-operate with the carrier might be interposed as a defense to an action by the injured person (*Roth* v. *National Automobile Mut. Cas. Co., supra*), that an action under this section could not be maintained by an assignee of the judgment creditor (*Jackson* v. *Citizens Cas. Co., supra*), that no right of action was given to an indemnity creditor (*Royal Ind. Co.* v. *Travelers Ins. Co.,* 244 App. Div. 582, affd. 270 N. Y. 574) or contribution creditor under section 211-a of the Civil Practice

Act (*Metropolitan Cas. Ins. Co.* v. *Union Ind. Co.*, 141 Misc. 792, affd. 229 App. Div. 827, affd. 255 N. Y. 591). As a result, there has been a gradual liberalization of the terms of the provisions of section 167 (formerly § 109) of the Insurance Law. It is not now necessary that the insured be shown to be insolvent or bankrupt; it is merely necessary that the judgment remain unsatisfied for a period of thirty days after notice of entry thereof is served on the insured or his attorney and upon the insurer (subd. 1, par. [b]); notice given by the insured by or on behalf of the injured person to any licensed agent of the insurer is deemed to be notice to the insurer (subd. 1, par. [c]). Notice of the accident is deemed to be sufficient if "given as soon as was reasonably possible" (subd. 1, par. [d]). The burden of proof of refusal or failure of the insured to co-operate is cast upon the insurer (subd. 5) and an action may now be maintained by an assignee and a person entitled to enforce a right of contribution or indemnity (subd. 7). It is apparent that every extension of the rights of an injured person, or one claiming under or through him, relative to direct actions against insurance carriers has been the result of legislative enactment, and that the courts have consistently refused to grant any other or further privileges than the statute specifically provides.

We cannot but be convinced that this line of cases and the remedial amendments to the statute resulting therefrom firmly establish it to be the public policy of this State that a direct action against an insurer can be maintained in our courts only when the conditions of our statute are complied with (see *Lang* v. *Merchants Mut. Cas. Co.*, 203 Misc. 258). And this would seem to be particularly true in the case of the Louisiana statute here involved, where the construction placed upon it by the Louisiana courts is that none of the defenses established by the contract of insurance which the casualty company might have against the insured are available when the injured party brings the action — certainly diametrically opposed to our law, as stated by the Legislature in section 167 of the Insurance Law.

It is true that rights may not be granted or withheld by our courts "at the pleasure of the judges, to suit the individual notion of expediency or fairness." The quotation is from *Loucks* v. *Standard Oil Co.* (224 N. Y. 99, 111), an action for wrongful death brought under a Massachusetts statute. But our policy with respect to that type of action is radically different from what it is in the case at bar. As Judge Cardozo pointed out at page 111: "there is nothing in the Massachusetts statute that outrages the public policy of New York. We have

a statute which gives a civil remedy where death is caused in our own state. We have thought it so important that we have now imbedded it in the Constitution (Const., art. 1, § 18). The fundamental policy is that there shall be some atonement for the wrong.''

We conclude that the Louisiana statute under consideration limited the right of action it created to an action brought in the specified parishes in Louisiana, and that the courts in that State have so held; we further apprehend that the enactment is opposed to the public policy of this State, as expressed in our own statutes and judicial decisions, and as such is not enforcible in our courts.

In view of this determination, the appeals from the orders denying a separate trial and granting examination before trial become academic.

The order denying the motion for summary judgment should be reversed, with $10 costs and disbursements, and the motion should be granted. The order granting an examination before trial should be reversed, without costs, and the motion should be denied. The appeal from the order denying a separate trial should be dismissed, without costs.

MacCrate and Schmidt, JJ. (dissenting). Summary judgment was properly denied. It is for the courts of New York to determine whether the right of direct action created by the State of Louisiana in favor of persons injured in that State against insurers (Rev. Stat. of Louisiana [1950], tit. 22, § 655) is substantive or procedural. (*Russell* v. *Societe Anonyme Des Etablissements Aeroxon*, 268 N. Y. 173, 181; *Murray* v. *New York, Ontario & Western R. R. Co.*, 242 App. Div. 374.) The Supreme Court of Louisiana has declared that the statute creates a substantive right of action. (*West* v. *Monroe Bakery*, 217 La. 189; *Lumbermen's Cas. Co.* v. *Elbert*, 348 U. S. 48.) While cases cited by appellant at Special Term in courts other than the Supreme Court of Louisiana, hold that the statute is procedural in nature, that did not make a question of fact as to the law of Louisiana for a jury. There was no dispute at Special Term as to the provisions of the statute or as to the fact that there is the decision of the Supreme Court of Louisiana in *West* v. *Monroe Bakery* (*supra*) or as to the contents of that decision. No later decision of that court on that question was cited by either party. None is called to the attention of this court and none has been found. We conclude that the statute created a substantive right of action against insurers who do business in Louisiana. Insofar as the statute prescribes the

parishes in which actions must be brought (*Miller* v. *Commercial Std. Ins. Co.*, 199 La. 515), it is procedural in nature. The Supreme Court of Louisiana in *West* v. *Monroe Bakery* (*supra,* p. 191) held that the right of action becomes "vested at the moment of the accident" in which a person is injured. Our Court of Appeals has held that a right of action created by a foreign statute is a right of property which the courts of this State cannot refuse to enforce if the enforcement does not violate "some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal" (*Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 111). It has also been held that "A cause of action for personal injuries is transitory" and "Liability follows the person and may be enforced wherever the person may be found" (*Mertz* v. *Mertz*, 271 N. Y. 466, 470).

As stated, the Supreme Court of Louisiana has decided that a cause of action under the statute vests immediately upon the happening of an accident in that State. That is, the cause of action vests before the right to sue is exercised. The injured party has a choice of one of two parishes in which to sue. The venue prescribed by the statute is not made an intrinsic part of a cause of action. (*Tennessee Coal Co.* v. *George*, 233 U. S. 354; cf. *People* v. *Metropolitan Sur. Co.*, 211 N. Y. 107.) *Miller* v. *Commercial Std. Ins. Co.* (199 La. 515, *supra*) did not hold to the contrary. In that case the court dealt solely with the question whether an injured person could sue an insurer in a direct action in a parish other than those specified in the statute creating the right of action. It was held that an action would not lie in another parish.

WENZEL, Acting P. J., and BELDOCK, J., concur with UGHETTA, J.; MACCRATE and SCHMIDT, JJ., dissent and vote to affirm, with memorandum.

Order denying motion for summary judgment reversed, with $10 costs and disbursements, and motion granted.

Order granting an examination before trial reversed, without costs, and motion denied.

Appeal from order denying a separate trial dismissed, without costs.