NAP, INC., Plaintiff,

v.

SHUTTLETEX, INC., and the St. Paul Companies, Inc. as Successor–in–Interest to USF & G Corp., Defendants.

No. 98 Civ. 7776(VM).

United States District Court,
S.D. New York.

Sept. 11, 2000.

**370**

Mark Walfish, Judith Shampanier, Esanu, Katsky, Korins & Siger, LLP, New York City, for Plaintiff.

Anthony J. Piazza, Saperston & Day, P.C., Rochester, NY, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff NAP, Inc. ("NAP"), a New York corporation which manufactures women's clothing for sale under the Crab-tree & Evelyn label, brought this diversity action naming as defendants Shuttletex, Inc. ("Shuttletex"), a New Jersey company which is currently in bankruptcy proceedings, and Shuttletex's commercial general liability insurer, U.S. Fidelity and Guaranty Insurance Underwriters, Inc. (hereinafter, "USF & G"), whose successor in interest is the St. Paul Companies, Inc. NAP seeks damages from Shuttletex for breach of an express and implied warranty, alleging that in 1997 NAP purchased lace from Shuttletex that was warranted as, but in fact was not, appropriate for machine-washable clothing. NAP also asks the Court for a determination, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, that USF & G must pay any damages that in the underlying action Shuttletex is found to have caused NAP. USF & G, through the St. Paul Companies, has moved to dismiss NAP's declaratory relief action on the ground that, under New York law, NAP has no standing to sue the insurer prior to an entry of judgment against the insured. It is this motion that is currently before the Court.

Sometimes narrow disputes conceal deeper legal currents than the parties' definition and treatment of the issues would suggest. What is characterized as straightforward and mundane, at bottom, may be no small matter. For, like undertows, hidden forces may escape surface view but actually course beneath unseen toward a larger disposition. The full proportions of the potential legal outfall are not always immediately discerned. This action presents a case in point.

The parties concede that no factual issues divide them, and posit that the question they bring to the Court on this motion is a narrow one: whether resolution of their underlying difference is to be governed by federal procedure or state law; whether the state law in question is procedural or substantive. In addressing their arguments to the issues so framed, the parties' briefs are indeed very brief. Further, as regards the limited federal ques-

tion presented, there is a substantial split among federal courts in this district that the Second Circuit has yet to address. And with respect to the state statute involved, on the books since 1917, the New York Court of Appeals has not ruled definitively, and the Appellate Division is also sharply divided, three Departments having expressed two diametrically opposed interpretations as to the proper application of the same provision.

Thus, surface dichotomies often tempt litigants into facile analysis, and invite courts to summary resolution of issues truly guided by larger undercurrents. What comes into play here is that choosing the proper measure to apply in adjusting the balance of procedure versus substance and the federal-versus-state-law jurisdictional equation, demands delicate calibrations. The decision calls for much more meticulous weighing of constitutional values and subtle accommodations of divergent interests implicated in the equitable administration of justice than a cursory look at the narrow private issue here would indicate.

## DISCUSSION

USF & G argues that NAP, which was not a party to the underlying insurance contract at issue, has no privity with the insurer and thus has no standing to bring this claim against USF & G. While ac-knowledging that the New York Insurance Law allows non-parties injured by an insured to sue an insurer, USF & G asserts that the circumstances for such actions are strictly circumscribed by the controlling statute, New York Insurance Law § 3420. Section 3420(a)(2) of the statute requires that insurance policies issued or delivered in the state contain provisions specifically authorizing direct actions brought under the terms of the policy against an insurer by an allegedly injured party to be instituted only when a judgment against the insured person has remained unsatisfied for 30 days from the date of service of notice of entry of judgment.[1] N.Y. Insur. Law § 3420(a)(2) (McKinney 1985). Section 3420(b)(1) further provides that an action may be maintained against the insurer by a person who has obtained a judgment against the insured for damages or injury sustained during the life of the policy. *See id.*

USF & G argues that the requirement of entry of a judgment against the insured is a substantive state rule of law enunciating a condition precedent to the filing of any direct claim by an injured third party against an insurer, regardless of whether the remedy sought is declaratory or for damages. USF & G points to some state court cases that support its general posi-

1. The full text of the relevant provisions state:

§ 3420(a) —No policy or contract insuring against liability for injury to person ... or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions which are equally or more favorable to the insured ...

(2) A provision that in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

§ 3420(b) —Subject to the limitations and conditions of paragraph two of subsection (a) hereof, an action may be maintained by the following persons against the insurer upon any policy or contract of liability insurance which is governed by such paragraph, to recover the amount of a judgment against the insured or his personal representative:

(1) any person who, or the personal representative of any person who, has obtained a judgment against the insured or his personal representative, for damages for injury sustained or loss or damage occasioned during the life of the policy or contract.....

tion. *See, e.g., Abdalla v. Yehia*, 246 A.D.2d 373, 667 N.Y.S.2d 736 (1st Dep't 1998); *Clarendon Place Corp. v. Landmark Insurance Co.*, 182 A.D.2d 6, 587 N.Y.S.2d 311 (1st Dep't 1992); *Hershberger v. Schwartz*, 198 A.D.2d 859, 604 N.Y.S.2d 428 (4th Dep't 1993).

NAP counters that the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, through which it seeks relief against USF & G in this Court, is procedural and, thus, the remedy it authorizes is available here in accordance with federal law rather than state law, making interpretation of State Insurance Law § 3420 essentially immaterial to the appropriateness of a declaratory judgment. NAP points to some federal cases in this district supporting this proposition. *See Gravatt v. General Star Indem. Co.*, No. 98 Civ. 6670, 1999 WL 212681 (S.D.N.Y. Apr.13, 1999); *deBruyne v. Clay*, No. 94 Civ. 4707, 1997 WL 471039 (S.D.N.Y. Aug.18, 1997); *Ryder Truck Rental, Inc. v. Allcity Ins. Co.*, No. 94 Civ. 0712, 1995 WL 628968 (S.D.N.Y. Oct.26, 1995). In these cases, brought under diversity jurisdiction, the courts have rejected arguments that § 3420(b) precluded the application of the federal Declaratory Judgment Act. Relying on these precedents, NAP argues that there would be no conflict of laws principles foreclosing the application of federal procedure here.

Alternatively, NAP asserts that even if its claim were not brought under the federal declaratory judgment statute, the New York Insurance Law prohibits only a direct cause of action against the insurer to recover money damages and not a declaratory judgment action by the injured party in the underlying tort. As authority for this contention, NAP cites *Watson v. Aetna Casualty & Surety Co.*, 246 A.D.2d 57, 675 N.Y.S.2d 367 (2d Dep't 1998) and related Second Department precedent. *See, e.g., Halali v. Evanston Ins. Co.*, 245 A.D.2d 422, 666 N.Y.S.2d 676 (2d Dep't 1997); *Tepedino v. Zurich–American Ins. Group*, 220 A.D.2d 579, 580, 632 N.Y.S.2d 604, 605 (2d Dep't 1995). In these cases,

the Appellate Division specifically held that a declaratory judgment action by an injured third party against an insurer is not barred by § 3420, even though direct actions for damages against the insurer are precluded prior to the entry of a judgment against the insured.

Thus, two threshold matters here emerge as critical to this Court's analysis of the issues presented. First is the application of the federal Declaratory Judgment Act and second the application of New York Insurance Law § 3420.

### A. The Declaratory Judgment Act (the "Act")

NAP argues that it brought this action under federal law, affirmatively invoking 28 U.S.C. § 2201, and that the statute therefore governs the resolution of NAP's claim. It stresses the Act is procedural in that it offers only a remedy which does not demarcate substantive rights but procedurally merely limits the timing or control of when an action might otherwise be commenced.

This Court disagrees. NAP's arguments are not consistent with the language and legislative intent of the state law. They are also contrary to the proper application of the Act and to overarching policy ends of promoting harmonious federal-state relations in the administration of justice.

■ As an initial matter, the Court believes that the state enactment at issue here is a substantive statute and that NAP's invocation of the federal declaratory judgment procedure must yield to the outcome that proper application of state law would indicate. On close analysis, the theory and logic of § 3420 evince a legislative scheme manifestly charged with substantive purpose. The statute adjusts the interests, rights and duties of the parties in the three-way relationship linking the insurer, the insured, and the injured third party. In measured ways, the realignment § 3420 enacts is significantly different

from the common law's firm bar against direct actions absent privity between the insurer and the third person claiming a stake in the insurance contract. *See Lauritano v. American Fire Ins. Co.*, 3 A.D.2d 564, 567, 162 N.Y.S.2d 553, 555 (1st Dep't 1957) ("The legislature, recognizing that an injured party, while not privy to the insurance contract, had a genuine interest in it and should be enabled to invoke its protection, enacted § 109 of the Insurance Law, forerunner of the present § 167, to create, as its heading indicates, an independent right of the injured person to proceed directly against the liability insurer (L.1917, ch. 524). Successive amendments have profoundly altered what was once commonly accepted—that the liability policy existed solely for the protection of the insured."); *Metropolitan Cas. Ins. Co. v. Union Indem. Co.*, 141 Misc. 792, 253 N.Y.S. 324, 325–26 (N.Y.Sup.(Monroe) 1929) *aff'd* 229 A.D. 827, 242 N.Y.S. 807, *aff'd* 255 N.Y. 591, 175 N.E. 326 (1931) (finding that Section 109, which gave a right of action against insurers to injured persons, was in derogation of common law and must be strictly construed.)

Section 3420 defines four specific prerequisites as elements of a direct third-party action against an insurer: (1) a judgment against the insured; (2) a thirty-day waiting period, measured from service of notice of entry, during which the judgment remains unsatisfied; (3) an action against the insurer maintained by the person who obtained the judgment; and (4) the amount of the judgment cannot exceed the applicable limit of coverage under the insurance policy. These conditions are not waivable procedures, but integral predicates for stating and sustaining a cause of action under the statute. *See Thrasher v. United States Liab. Ins. Co.*, 19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503 (1967) (ruling that the notice of entry of judgment element is a substantive precondition to establish a direct action against an insurer); *see also Morton v. Maryland Casualty Co.*, 1 A.D.2d 116, 126, 148 N.Y.S.2d 524 (2d Dep't 1955) ("[E]very extension of the rights of an injured person ... relative to direct actions against insurance carriers has been the result of legislative enactment, and the courts have consistently refused to grant any other or further privileges than the statute specifically provides"), *aff'd*, 4 N.Y.2d 488, 176 N.Y.S.2d 329, 151 N.E.2d 881 (1958).

By its terms, this arrangement recognizes a third-party right that did not exist previously, and contemplates that the insurer is to be spared of involvement in litigation until the issue of its insured's liability and the scope of the obligation for damages have been adjudicated. *See deBruyne*, 1997 WL 471039 at *3 ("One of the obvious purposes of the statute at issue is to spare insurance companies the perhaps needless expense of defending a coverage action when it is possible that the underlying action will result in a determination that its insured had no liability.") For insurers, this condition offers a substantial benefit, mitigating the diminution of previous common law protection they lost in favor of the privilege the statute bestows on the injured claimant. In the event the insured is found not liable, for example, the insurer has no need to be brought into the action at all, an interest especially valuable where the insurer has already made a legitimate disclaimer of coverage. The 30–day waiting period allows for the prospect that the insured, if held liable, may satisfy the judgment directly, again without unnecessarily implicating the insurer. By the same token, this time limitation enables insurers and their customers to adjust their respective rights and duties among themselves before the injured third parties legally intervene between them.

Through this framework, the statute appears designedly drafted to reorder the interrelationships among the three parties interested in a particular insurance policy and to delineate the temporal limits of when the third person's right vests for adjudication in a direct suit. Federal

courts sitting in diversity are obliged to "make the delicate accommodation between state substantive law and federal procedural law in adjudicating state-created causes of action". *118 East 60th Owners Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 201 (2d Cir.1982).

To highlight the fundamental judicial comity question passing as an undercurrent through the case at hand, this Court must consider the potential disruption to the state statutory design potentially implicated here. Strictly construed, as it must be, *see Clarendon*, 182 A.D.2d at 9, 587 N.Y.S.2d at 313, § 3420 would not permit an injured third person not in privity with the insurance carrier to sustain an action in a State court against the insurer, and the carrier would be entitled to dismissal of a premature action. *Id.* Thus, on this reading, the insurer would not be compelled prematurely to adjudicate its relationship with the insured. In the event the insured is exonerated, the insurer would avoid all involvement in the action. And, as often occurs during the pendency of litigation, it would not be compelled to post a substantial bond to secure any judgment resulting from the underlying liability determination. Accordingly, here, at least under one interpretation of § 3420, NAP would not have standing to maintain an action at this time were it to file against USF & G in State court in this district.

This Court believes these potential results are both substantial and substantive. They cannot fairly be dismissed as inconsequentially procedural. To the contrary, were the Court, which is conferred jurisdiction over the action by the happenstance of diversity and is thus duty-bound to apply state law, to ignore the potential impacts of § 3420, it would effectively create a federal cause of action and confer standing to maintain a suit where such a privilege may not exist under the state law and policy the Court is obligated to honor. *See State Trading Corp. v. Assuranceforeningen Skuld*, 921 F.2d 409 (2d Cir.1990) (holding that a Connecticut's direct action

statute is substantive because it establishes a cause of action against a defendant where such right did not previously exist).

Conversely, such a course would impose substantial legal obligations upon an insurer to defend itself against a third party with whom it has no contractual privity and who has not satisfied the state statutory prerequisites for commencing a state court action against the insurer. By engaging in such an adjudication, the federal court would effectively circumvent the State's substantive policy and apply a federal procedural device in a manner that may contravene state legislative purposes. More to the point than its impacts on the parties are the potential conflicts between federal and state judicial administration that this course of action may produce. The more effective and more equitable administration of justice that *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), contemplated would not be served by a ruling that would permit a federal court sitting in diversity to disregard an applicable state statute which may envision an outcome diametrically at odds with that which the federal court applying purported federal procedure would render.

These considerations have weighed persuasively in rulings of the Second Circuit and other courts which have held direct action statutes comparable to § 3420 to be substantive. *See, e.g., State Trading Corp.*, 921 F.2d 409 (holding Connecticut's direct action statute is substantive); *Collins v. American Auto. Ins. Co.*, 230 F.2d 416 (2d Cir.1956); *Oltarsh v. Aetna Ins. Co.*, 15 N.Y.2d 111, 256 N.Y.S.2d 577, 204 N.E.2d 622 (1965). As is also true of the action before the Court, the issue in these cases turns on what basically lies at the core of § 3420 and similar statutes. One view, advocated by NAP and supported by the authorities it cites, maintains that the statute governs only the process of timing or control of commencing litigation. Another interpretation holds that in essence these statutes address a much more elemental prerequisite: standing to sue.

Indisputably, the concept of standing fundamentally is a substantive matter. It constitutes a threshold requirement that goes to the existence of a case or controversy, determining the power of the court to entertain a complaint. The question is decided by an inquiry as to whether a litigant is entitled to have the court adjudicate the merits of the particular legal controversy the party brings. *See Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Frissell v. Rizzo,* 597 F.2d 840 (3d Cir.1979), *cert. denied,* 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

Second, in this Court's view, the issue here is much more fundamental than the dismissive label "merely procedural" often tends to imply. Upon invocation of the Act in diversity cases, a plaintiff's mechanical incantation that the statute is procedural cannot serve as reason for cursory analysis that leads to rote application of federal law. That approach may short-circuit the pertinent inquiry without even a passing glance at the substantive state law implicated, and may curtail a probe of the potentially adverse effects on state policies and on the federal-state jurisdictional equation that may be occasioned by the federal court's not properly applying relevant state law. Consequently, the reflexive branding of an action as procedural bypasses the more exacting search demanded into other relevant issues of statutory purpose and public policy, and carries the risk, as this Court believes exists here, of applying the Act in a manner that reaches a result of conferring rights and obligations and bestowing remedies that are not available under state law at this time. Such an outcome, not contemplated by the purposes of the Act, would yield precisely the unsalutory consequences to the administration of justice and to federal-state judicial comity that the doctrine of *Erie* sought to avert.

In enunciating the contours of *Erie's* intent and principles, the Supreme Court advised that lower courts sitting in diversi-

ty and pondering whether a state law is to be deemed procedural or substantive should be guided by the two primary ends of *Erie:* discouraging forum-shopping and avoiding the inequitable administration of justice. *See Hanna v. Plumer,* 380 U.S. 460, 467, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). To this end, the Court defined "procedure" as the "judicial *process* for *enforcing* rights and duties recognized by substantive law and for justly *administering* remedy and redress for disregard or infraction of them." *Id.* at 464, 85 S.Ct. 1136 (emphasis added). Under the *Hanna* definition, this Court does not view § 3420 as merely "process" for enforcing rights and duties and for administering remedy. To read the statute as achieving nothing more than regulating the control or timing of when direct actions against an insurance carrier may be instituted by a third person gives § 3420 short shrift.

The approach this Court believes is the proper course for resolution of the issues before it, one consistent with the principles of *Erie* and *Hanna,* is that articulated by the Second Circuit in *Bonner Properties, Inc.,* 677 F.2d 200. The Circuit Court there held that federal declaratory remedy was not available in a case where plaintiff sought to initiate litigation by affirmatively asserting, under New York's civil practice law, a time-barred defense. The Court found that state law would not permit use of a time-barred defense to commence a declaratory judgment action. In reaching this conclusion, the Circuit Court observed that, although normally whether or not declaratory relief was available under state law is irrelevant to the federal granting of such a remedy, "when a state that has a declaratory remedy withholds it in a particular class of cases in order to vindicate a state substantive policy, such as a limitations policy, it is entirely appropriate for a federal court to assess the impact of its grant of a declaratory remedy on that substantive policy of the state". *Id.* at 202 (citing *Great Lakes Dredge & Dock Co. v.*

*Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)).

In framing the relevant inquiry, the Circuit Court formulated the question as "whether the federal procedural device of the Declaratory Judgment Act permits a diversity court to reach a result that would not be obtained in the courts of the forum state." *Bonner,* 677 F.2d at 204. Observing that the Declaratory Judgment Act "is not phrased in absolutes", the court concluded that the statute's application in that case would directly undermine state substantive policies. *Id.* at 205. In the case at bar, state substantive policy may also have carved out an exception to otherwise available declaratory remedy, constraining a third party's ability to maintain a direct action against an insurer within given confines. No less than it was in *Bonner Properties,* it would be inappropriate here to use the federal statute in a diversity action in which declaratory relief would "needless(ly) obstruct ( ) . . . the domestic policy of the states." *Id.* at 205 (quoting *Huffman,* 319 U.S. at 298, 63 S.Ct. 1070).

■ Third, application of the federal declaratory judgment statute as NAP urges here may not only undermine the substantive design contemplated by the State Insurance Law, and thereby disturb the delicate federal-state jurisdictional equilibrium, but also would run counter to the federal constitutional and statutory framework upon which the Act is grounded. The Act, as a procedural device, does not confer or expand federal subject matter jurisdiction, nor establish an independent basis for a cause of action. *See generally Skelly Oil Co. v. Phillips Petroleum Corp.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194; *PDK Labs v. Friedlander,* 103 F.3d, 1105 (2d Cir.1997); 12 James Wm. Moore et al., *Moore's Federal Practice 3d* ¶ 57.21[1] (2d ed.1985). Moreover, consistent with the scope of federal court jurisdiction under Article III of the federal Constitution, the Act requires for its application the existence of a "case of actual controversy" within the court's jurisdiction. 28 U.S.C. § 2201. Accordingly, as another court in this district observed in also holding that New York Insurance Law § 3420 is a substantive statute, "[a] declaratory judgment action is premature if standing to maintain such an action depends on a future event that is beyond the control of the parties and that may never occur." *Richards,* 40 F.Supp.2d at 169. (citing *New York Pub. Interest Research Group, Inc. v. Carey,* 42 N.Y.2d 527, 399 N.Y.S.2d 621, 369 N.E.2d 1155 (1977)).

These principles are very much on point here, to the same extent they arose and affected the court's ruling in *Richards.* Where an injured third party, prior to an adjudication of liability, institutes an action directly against an insurer which has disclaimed coverage and seeks to establish the insurer's obligation to defend and indemnify the insured, the actual controversy arises between the insurer and the insured. In this situation, a real possibility exists that any declaration of the rights and legal relations between the parties that the court renders may amount to an advisory opinion potentially grounded on standing that may not obtain or on a contingency that may not occur. *See generally Golden v. Zwickler,* 394 U.S. 103, 108–09, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *see also Ticor Title Ins. Co. v. American Resources, Ltd.,* 859 F.2d 772, 773–74 (9th Cir.1988) That prospect may be especially pertinent here because NAP indicates that Shuttletex is in bankruptcy and no longer doing business, raising potential uncertainties, practical difficulties, contingencies or delays in NAP's ability to obtain a judgment resolving the issue of liability or damages upon which any obligation of USF & G may depend.

For the reasons discussed, the Court holds that NAP's standing to maintain this case, even though the action was brought under the federal Declaratory Judgment Act, must be decided in accordance with § 3420 of the State Insurance Law. If in fact NAP's declaratory relief suit would be

foreclosed in state courts, it similarly should be barred here. It thus remains for the Court to examine the application of § 3420 under state case law.

## B. State Insurance Law § 3420

NAP contends that even if its declaratory judgment claim had not been brought under the federal statute, there is New York State authority which would sustain a proceeding for declaratory relief by an injured directly against an insurer. This argument relies upon case law from the State's Appellate Division, Second Department. *See* Watson, 246 A.D.2d 57, 675 N.Y.S.2d 367; *Halali,* 245 A.D.2d 422, 666 N.Y.S.2d 676; *Tepedino,* 220 A.D.2d 579, 632 N.Y.S.2d 604; *Costa v. Colonial Penn Ins. Co.,* 204 A.D.2d 591, 612 N.Y.S.2d 617 (2d Dep't), *leave to appeal dismissed,* 84 N.Y.2d 966, 621 N.Y.S.2d 513, 645 N.E.2d 1213 (1994).

However, as noted above, the First Department has taken an opposite view on the same issue. It has been joined by one case in the Fourth Department. *See Clarendon,* 182 A.D.2d 6, 587 N.Y.S.2d 311; *Abdalla,* 667 N.Y.S.2d 736; *Hershberger,* 198 A.D.2d 859, 604 N.Y.S.2d 428.

A federal court sitting in diversity must look to the highest state court for guidance on the interpretation of state law. In this case, however, § 3420 has not yet been interpreted by the New York Court of Appeals, leaving to this Court the task of attempting to predict how that court would likely construe the statute. *See Gasperini v. Center for Humanities, Inc.,* 66 F.3d 427, 430 (2d Cir.1995). This is not simple task where, as here, New York's Appellate Courts have staked contrary positions. A split also exists among the federal courts in this district that, in a context of similar actions brought under 28 U.S.C. § 2201, have attempted to predict how New York highest court might interpret § 3420.

In *deBruyne,* the court examined the divergence between the two State Appellate Departments and expressed the view that the State Court of Appeals would allow a third-party plaintiff to maintain an action directly against an insurer. However, in that case, the insurer had already commenced its own declaratory judgment action in state court seeking a determination of its obligations. Accordingly, the *deBruyne* court qualified the scope of the issue it considered and decided more narrowly to encompass the particular fact that the insurer "has itself instituted a declaratory judgment action with respect to coverage issues relating that party's claims against one of its insureds". *Id.* at *3. *See also Gravatt,* 1998 WL 842351 at *2.

This holding, however, differs from the conclusion another district court reached in *Richards,* where the court found that New York's direct action statue is substantive, not procedural, and must be applied by a federal court sitting in diversity. The action in *Richards* entailed a set of facts much closer to those at issue in the case at hand. In *Richards,* as here, the injured plaintiff sought, through the federal declaratory judgment statute, a determination that the insurer was liable for any recovery against an insured whose claim the insurer had denied. Unlike in *deBruyne,* the *insurer* had not sought separate declaratory relief in state court.[2] This Court is persuaded by the reasoning in *Richards.*

In gauging how the State Court of Appeals is likely to rule on the issue here, this Court considers where the greater weight of authority lies. In this regard, the Court notes that while the Second Department has decided one way on the issue, two Departments—the First and the Fourth—have ruled differently. *See* cases cited *supra.* Moreover, this Court considers the reasoning of the First Department, where this Court sits, the more cogent. In

---

**2.** Nonetheless, in *Richards,* the *insured* had in fact commenced an action in state court against the insurance carrier seeking a decla-

ration of its rights and the insurer's liabilities related to the underlying tort action. *See* 40 F.Supp.2d at 165.

*Clarendon*, the First Department noted that the plaintiff injured parties had no present rights flowing from Insurance Law § 3420(b) (1) because the statutory conditions to bringing an action had not been satisfied. The court declared that "absent any legally cognizable interest in the insurance contracts at issue, there is no justifiable controversy" between a third party and the insurer to give such party standing. The court further observed that any declaratory relief under these circumstances would be premature if the third party's standing to maintain such action is contingent on the occurrence of a future event which may not happen. *See Clarendon*, 587 N.Y.S.2d at 313. And because the insurance law created an action on behalf of the injured party against the insurer that was in derogation of the common law, it was subject to strict construction. *Id.* at 313.

The Second Department's most recent consideration of the issue is set forth in *Watson*. The court, resolving a conflict among some of its earlier decisions, found in the action before it that a genuine justiciable controversy involving substantial legal interests existed where the third party plaintiff, who brought the action directly against an insurer which had denied coverage to the defendant in the underlying . personal injury suit, would stand to benefit from the insurance policy.[3]

This Court believes that the First Department's analysis is the more compelling. It better conforms with the plain language and legislative intent § 3420 and appears more consistent with general principles of statutory construction and substantive law doctrines regarding declaratory relief actions.

### *ORDER*

In accordance with the foregoing, it is hereby

**ORDERED** that defendant USF & G's motion to dismiss the declaratory judgment claim against it is GRANTED.

**SO ORDERED**

---

**3.** While it may not have been a controlling consideration, in *Watson*, the plaintiff had already obtained a default judgment against the insured on the issue of liability, but on not damages. Plaintiff sought to compel the insurer to defend and indemnify the defaulting insured.